**UNITED STATES of America,
Appellant,**

v.

**Thomas Anthony CERASO et al.
No. 72–1355.**

United States Court of Appeals,
Third Circuit.

Argued July 11, 1972.

Decided Aug. 16, 1972.

As Amended Sept. 15, 1972.

See also D.C., 332 F.Supp. 1357.

John J. Robinson, Appellate Section, Crim. Div., Dept. of Justice, Washington, D. C. (S. John Cottone, U. S. Atty., Scranton, Pa., Sidney M. Glazer, Atty., Raymond E. Makowski, Sp. Atty., Dept. of Justice, Washington, D. C., on the brief), for appellant.

Thomas J. Hanlon, Scranton, Pa. (Anthony D. Miele, Michael J. Casale, Williamsport, Pa., Arthur K. Dils, Harrisburg, Pa., on the brief), for appellee Frank Casale.

Before ALDISERT, MAX ROSENN and HUNTER, Circuit Judges.

## OPINION OF THE COURT

MAX ROSENN, Circuit Judge.

The United States appeals from a decision suppressing wire-taps authorized under the provisions of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 et seq. (1970).[1]

Appellees allegedly conducted a gambling operation in Williamsport, Pennsylvania. The Department of Justice's Organized Crime Strike Force obtained wire-taps for several telephones supposedly used by the appellees. The taps yielded recordings of telephone conversations which the Government intended to introduce at trial.

After a suppression hearing, the district court concluded that the tapes of the conversations could not be introduced because the Government had violated specific provisions of Title III when it made application to the courts for an appropriate order. None of the district court's objections involve appellees' fourth amendment rights. Both parties to the litigation concede that probable cause was shown and that the scope of the surveillance was properly delimited in conformance with all constitutional standards.[2] However, the wire-taps were held defective in the opinion of the district court because:

(1) Neither the Attorney General nor an Assistant Attorney General specially designated by him authorized the application to the court as required by 18 U.S.C. § 2516(1);[3]

(2) The application did not identify correctly the officer authorizing the ap-

---

1. Several other defendants were indicted along with appellees in this case. Appellee Frank Casale had his trial severed. The other appellees went to trial, but mistrial was declared after the jury could not reach a verdict. At the same trial, other co-conspirators were convicted and appeals have been taken in those cases by Thomas Ceraso, Beverly Ceraso and John Troutman, Nos. 72–1279, –1280, and –1284. We heard consolidated argument on these appeals because they share the common issue of the validity of the authorization for a wire-tap. However, because the appeals of the Cerasos and Troutman involve several issues in addition to the wire-tap, we have written a separate opinion in their case, 467 F.2d 653.

2. See, e. g., Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967);

Berger v. New York, 388 U.S. 41, 87 S. Ct. 1873, 18 L.Ed.2d 1040 (1967).

3. 18 U.S.C. § 2516(1) reads as follows: The Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for, and such judge may grant in conformity with section 2518 of this chapter an order authorizing or approving the interception of wire or oral communications by the Federal Bureau of Investigation, or a Federal agency having responsibility for the investigation of the offense as to which the application is made, when such interception may provide or has provided evidence of. . . .

plication to the court as required by 18 U.S.C. § 2518(1)(a);[4] and

(3) The court order did not identify correctly the officer authorizing the application to the court as required by 18 U.S.C. § 2518(4)(d).[5]

We do not agree with the district court's conclusions and hold that the wire-taps should have been permitted into evidence.

In this case, the field attorney in charge of the investigation transmitted his request for a wire-tap to the Department of Justice in accordance with the provisions of the statute. The application then entered the channels used by the Department to process and analyze such requests. First, the request was reviewed by attorneys in a special unit of the Organized Crime and Racketeering Section of the Criminal Division whose primary function it was to review these matters. Then, the file was forwarded to the Deputy Chief or Chief of the Organized Crime and Racketeering Section who also approved the recommendation. At this point, the Deputy Assistant Attorney General of the Criminal Division reviewed the file and forwarded it to the office of the Attorney General. After a further review by the Executive Assistant to the Attorney General, Sol Lindenbaum, the Attorney General *personally approved* the application.[6]

However, he did not immediately sign the letter authorizing the wire-tap application. Instead, he followed his established procedure of initialing a memorandum to Will Wilson, then Assistant Attorney General for the Criminal Divi-

sion, specially designating him to authorize the request. His memorandum stated as follows:

This is with regard to your recommendation that authorization be given to Raymond E. Makowski of the Criminal Division to make application for an Order of the Court under Title 18, United States Code, Section 2518, permitting the interception of wire communications for a fifteen (15) day period to and from telephone numbers 717–322–0248, 717–322–0805, and 717–322–4443, located at 2315 W. Southern Avenue, South Williamsport, Pennsylvania and telephone number 717–322–9163, located at Frankie's Tavern, 243 Market Street, Williamsport, Pennsylvania, in connection with the investigation into possible violations of Title 18, United States Code, Section 1955, 2, and 371, by Thomas Anthony Ceraso, Frank Casale, James Hurley, Lloyd Bosch, John E. Troutman, and others as yet unknown.

Pursuant to the power conferred on me by Section 2516 of Title 18, United States Code, you are hereby specially designated to exercise that power for the purpose of authorizing Raymond E. Makowski to make the above-described application.

Because the Assistant Attorney General's office regarded this authorization as a ministerial act in light of the Attorney General's approval of the application, Wilson's Deputy, Harold Shapiro, signed Wilson's name to the letter subsequently transmitted to the district court. Although the letter bore the signature of the Assistant Attorney General, the

---

4. 18 U.S.C. § 2518(1) (a) reads as follows:

(a) the identity of the investigative or law enforcement officer making the application, and the officer authorizing the application;

5. 18 U.S.C. § 2518(4) (d) reads as follows:

(d) the identity of the agency authorized to intercept the communications, and of the person authorizing the application;

6. Because of the Attorney General's personal approval of the request, we are not faced with a situation in which none of the officials designated by Section 2516(1) approved the application. *See*, *e. g.*, United States v. Becker, 461 F.2d 230 (2d Cir. 1972); United States v. Pisacano, 459 F.2d 259. (2d Cir. 1972); United States v. Robinson, 468 F.2d 189 (5th Cir. 1972); United States v. Aquino, 338 F.Supp. 1080 (E.D.Mich. 1972); United States v. Baldassari, 338 F.Supp. 904 (M.D.Pa.1972).

affidavit of the attorney in charge of the investigation to the district court properly depicted the line of authority in this case. It stated in part that:

> Pursuant to the powers conferred on him by Section 2516 of Title 18, United States Code, the Attorney General of the United States, the Honorable John N. Mitchell, has specially designated the Assistant Attorney General for the Criminal Division of the United States Department of Justice, the Honorable Will Wilson, to authorize affiant to make this application for an order authorizing the interception of wire communications. The letter of authorization signed by the Assistant Attorney General is attached to this application as Exhibit A.

The subsequent order of the district court therefore recited that:

> . . . pursuant to application authorized by the Assistant Attorney General for the Criminal Division of the United States Department of Justice, the Honorable Will Wilson, who has been specially designated in this proceeding by the Attorney General of the United States, the Honorable John N. Mitchell, to exercise the powers conferred on the Attorney General by Section 2516 of Title 18, United States Code, to . . . .

These various documents comply with the intent of Congress as expressed in Sections 2516(1), 2518(1)(a) and 2518(4)(d).

Section 2516(1) requires that the Attorney General, or a specifically designated Assistant Attorney General, authorize each application to the court for a wire-tap order. Senate Rep.No.1097, which accompanied the Omnibus Crime Control bill, argued for this provision because it would "[centralize] in a publicly responsible official subject to the political process the formulation of law enforcement policy on the use of electronic surveillance techniques." 1968 U.S.Code Cong. and Admin.News, pp. 2112, 2185. The centralization would curtail divergent practices and would provide a means to place blame should abuses occur.

If Attorney General Mitchell had signed a letter stating that he had authorized the application, there would be no question that there was full compliance with the law. However, the district court found that the memorandum the Attorney General sent to the Assistant Attorney General was merely a delegation of authority that would permit the Assistant Attorney General to decide if the application should be approved. We do not believe this view was a correct interpretation of the memorandum. When it is read in light of the affidavits of former Attorney General Mitchell,[7]

---

7. Pertinent excerpts of the affidavit submitted by Former Attorney General Mitchell to the district court aver:

> I established a procedure whereby all requests for authorization to apply for wire interception orders are subject to intensive review in the Criminal Division of the Department of Justice and each of the requests in which the Criminal Division concurs is forwarded to me with a written recommendation of the Criminal Division that I approve it.
>
> Although 18 U.S.C. 2516(1) permitted me as Attorney General to designate an Assistant Attorney General to authorize applications for wire interceptions without my approval, I chose not to make such designation, but rather to require that all requests for authority to file such applications be forwarded to me for consideration. This procedure was intended to centralize in me the responsibility for and control of the policies to be followed by the Department of Justice in relation to Title III of the Omnibus Crime Control and Safe Streets Act of 1968.
>
> All requests received in my office are reviewed by my Executive Assistant, Sol Lindenbaum. Except as otherwise indicated herein, Mr. Lindenbaum transmits the request and all accompanying papers to me, along with his recommendation. If I determine to approve a request, I indicate my approval by initialling a memorandum addressed to the Assistant Attorney General in charge of the Criminal Division. This memorandum recites that the Assistant

and Deputy Assistant Attorney General Harold Shapiro,[8] it is evident that members of the Assistant Attorney General's office understood that the Attorney General had approved the application.

██ In addition, once the Attorney General personally approves a request, it is irrelevant for the purposes of Section 2516(1) that the Assistant Attorney General signs his name to the letter transmitted to the field. This procedure has been repeatedly approved by other courts. United States v. Becker, 461 F. 2d 230 (2d Cir. 1972); United States v. Pisacano, 459 F.2d 259 (2d Cir. 1972) (first extension application); United States v. Doolittle, 341 F.Supp. 163 (M. D.Ga.1972); United States v. D'Amato, 340 F.Supp. 1020 (E.D.Pa.1972); United States v. Iannelli, 339 F.Supp. 171 (W.D.Pa.1972); United States v. Aqui-

Attorney General is 'specially designated' to authorize the application. Upon receipt of my memorandum, a letter of authorization, over the name of the Assistant Attorney General, is dispatched to the applicant. The memorandum and the letter of authorization are part of the procedure developed for transmittal of my approval to the applicant. The memorandum constitutes a notification to the Assistant Attorney General of the Criminal Division that I have performed the discretionary act of approving the request.

Somewhat more than a year after this Department first utilized the provisions of Title III, I verbally authorized my Executive Assistant to act on my behalf on requests that might be transmitted by the Criminal Division at a time when I was not available to act on them. I gave him this authority in the light of his familiarity with my policies and with my decisions on all the requests that had been previously submitted to me. My subsequent review of cases in which he approved requests on my behalf confirmed that he followed my policies.

Since November 20, 1971, I have personally authorized all applications for interception orders which have been presented to Federal judges pursuant to 18 U.S.C. 2516(1).

8. Pertinent excerpts of the affidavit submitted by Deputy Assistant Attorney General Harold Shapiro to the district court aver:

This affidavit describes the processing within the Criminal Division of the Department of Justice at the request for authorization to make application to a Federal Court for a wire interception order with respect to certain telephones in South Williamsport and Williamsport, Pennsylvania, allegedly used by Thomas Anthony Ceraso and others.

The formal request for authorization to apply for a wire interception order in this matter was made by the Director of the Federal Bureau of Investigation on February 2, 1971. Prior to action on the request, the Departmental working file, consisting of copies of the proposed affidavit, application and order, were reviewed in a special unit of the Organized Crime and Racketeering Section of the Criminal Division whose primary function was to review the entire matter for form and substance with particular emphasis on assuring strict adherence to the required statutory, judicial, and Constitutional standards. Both the attorney handling the matter, J. Robert McBrien, and his supervisor, Philip T. White, of that Unit reviewed the file and recommended favorable action on the request. The file was then submitted for review to Kurt W. Mullenberg, a Deputy Chief of the Organized Crime and Racketeering Section, who recommended approval and sent the file to me. I examined the file and forwarded it to the Office of the Attorney General with a detailed recommendation that the authorization be granted. Following approval in the Office of the Attorney General, the Criminal Division dispatched the letter dated February 12, 1971, to Raymond E. Makowski advising him that he was authorized to present the application to the court.

I signed Will Wilson's name to the letter of February 12, 1971, in accordance with the authorization of Will Wilson and the standard procedures of the Criminal Division. I regarded the signing of Will Wilson's name as a ministerial act, because Will Wilson had authorized me to sign his name and to dispatch such a letter of authorization in every instance in which the request had been favorably acted upon in the Office of the Attorney General. Will Wilson did not examine the file or expressly authorize the application. . . . . .

no, 338 F.Supp. 1080, 1081 (E.D.Mich. 1972). We concur since once the Attorney General or his designated Assistant Attorney General approves, the purposes of centralization are achieved. The act of approval by the designated individual assures that there will be a uniform policy on electronic surveillance regardless of whether that individual's name is on the authorizing letter. Furthermore, because of the chain of investigation that was undertaken in this case, the decision-making process can be traced and, when necessary, responsibility placed where it belongs. Appellees have not submitted any evidence or argument that the purposes of the section were in any way frustrated by affixing the purported signature of the Assistant Attorney General on the letter.

■ Notwithstanding an appropriate authorization, the Government must still show that it has met the requirements of Section 2518. United States v. Focarile, 340 F.Supp. 1033, 1057 (D.Md. 1972), correctly characterizes the authorization and identification procedures as two distinct steps in the wire-tap application process.

■ However, in this case, the subsequent identification of the authorizing officer is satisfactory and meets the demands of the statute. Senate Report No. 1097 states that Sections 2518(1)(a) and (4)(d), which require identification of the authorizing officer in the Government's application and in the court's subsequent order, were inserted to assure that responsibility for the wire-taps could be fixed. 1968 U.S. Code Cong. and Admin.News at pp. 2189, 2192. The affidavit of the field attorney in charge of the investigation and the court's recitation of the history of the application must then be evaluated to test if it would provide an opportunity for ascertaining the responsible official. A fair reading of both documents show that both the Attorney General and the Assistant Attorney General share personal responsibility for this authorization.

The Government's affidavit states that the Attorney General, through the exercise of the power granted to him in Section 2516, designated the Assistant Attorney General to make this particular application. In the assessment of this court, that statement is sufficient to fix responsibility with him. The special designation of the Assistant Attorney General "to authorize affiant" to apply for the wire-tap order amounts to nothing more than a direction to perform the ministerial act of notifying the field attorney to proceed. Were there any abuses of the Government's power, the Attorney General could not escape responsibility under the circumstances.

If there were any doubt about the interpretation of the application to the court, it is clarified by the affidavits of the Attorney General and the Deputy Assistant Attorney General. The standard procedure in the Department during the tenure of Attorney General Mitchell was for him to approve all applications personally. However, he would then have the Assistant Attorney General transmit the appropriate letter. These facts are known not only because of the affidavits in this case, but also because of the repeated litigation which has tested various aspects of the authorization process. *See, e. g.,* United States v. Pisacano, supra. The Department of Justice has not sought to conceal these procedures and has readily disclosed them whenever asked.

Because the affidavit of the field attorney provided the necessary opportunity to ascertain official responsibility, we believe that it met the requirements of Section 2518(1)(a). The court's order broadly repeats the same statement of facts with regard to the identity of the authorizing individual, and therefore, it meets the requirements of Section 2518(4)(d).

■ The appellees object that were it not for the affidavits submitted by the Attorney General and Shapiro at the suppression hearing, the meaning of the memorandum, affidavit and court order

would not be clear at all. They further argue that it was inappropriate to consider such later statements because the original documents had to stand or fall on their own. On the authority of United States v. Focarile, supra, 340 F.Supp. at 1043–1044, they argue that such statements should not have been considered at the suppression hearing.

While we firmly believe that the documents are sufficiently clear on their face to withstand any attack by appellees, we note that it is appropriate for us to interpret them in light of the subsequently received affidavits. In United States v. Focarile the Government attempted to support the showing it made in its original application for a wire-tap with regard to its inability to conduct its investigation through the use of other techniques. The court held that the initial showing had to stand or fall on its own. The circumstances in the present case, however, differ distinctly from those involved in *Focarile's* discussion of the propriety of buttressing the original affidavit to the court with subsequent affidavits. That court stated in one portion of the opinion that it would be improper to permit supplementation of an original application for a wire-tap with subsequent affidavits. At this point, however, it was dealing with the factual question of whether all other investigative techniques had been exhausted before allowing the wire-tap. 18 U.S.C. § 2518(3)(c). If the information were not sufficient at the time the application was made, the request was defective on its face. In the case before us, the issue only concerns internal authorization procedures in the Department of Justice. The internal memorandum from the Attorney General to his Assistant was not even before the court that authorized the wire-tap. It was disclosed only at the suppression hearing, at which time it was not inappropriate for the Government to explain any potential ambiguity that it may have contained. As for the affidavit from the field attorney to the court, it was, at worst, ambiguous. It contained all the information necessary for the approval of the wire-tap. The use of affidavits for this purpose was approved in *Focarile*, supra at 1051–1052.

While we find this entire procedure in conformance with the statutory requirements, we note that the Department of Justice has not approached this matter with an eye to minimizing any questions or litigation about the validity of its wire-tap orders. While following the precise commands of the statute may be time consuming and a waste of critical departmental resources, adherence to the letter of the law would avoid the generation of this morass of litigation with which the Department has been faced.

The order of the district court will be reversed. The case will be remanded to the district court for further proceedings in conformance with this opinion.