**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Charles ROBERTSON, a/k/a Charlie Robertson, a/k/a Mr. Charlie, Howard Pinder, Sr., Annie McCray, Dean Lucas, and Donald Robertson, a/k/a Donnie Robertson, Defendants-Appellants.**

No. 73–2996.

United States Court of Appeals, Fifth Circuit.

Nov. 15, 1974.

Rehearing and Rehearing En Banc Denied Jan. 10, 1975.

---

Sidney A. Soltz, Miami, Fla., for defendants-appellants.

Robert W. Rust, U. S. Atty., Lloyd Bates, Jr., Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before TUTTLE, THORNBERRY and SIMPSON, Circuit Judges.

THORNBERRY, Circuit Judge:

After an FBI investigation into gambling operations in the Fort Pierce, Florida area, the government charged Charles Robertson, Howard Pinder, Sr., Annie McCray, Dean Lucas and Donald Robertson with violations of the federal

gambling statutes.[1] The five waived a jury trial below, and the district court adjudged them guilty of the offenses charged. They now seek to challenge their convictions on several grounds. Their primary claim is that the Court should not have considered certain wiretap evidence.[2] Appellants attack the court's decision to admit the wiretap evidence on two fronts. They claim that the Justice Department did not follow the requisite statutory procedures when authorizing the application for the wiretap, and that there was no necessity to employ a wiretap in the investigation of this gambling operation. We disagree and affirm.

In Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520, Congress detailed the procedures that the Justice Department must follow in obtaining judicial authorization to intercept wire communications. Title III requires the Attorney General or a specially designated Assistant Attorney General to approve the submission of a wiretap application to the appropriate District Court. 18 U.S.C. § 2516(1). 18 U.S.C. § 2518(1)(a) provides that the application shall include, among other information, the identity of the approving officer. Appellants contend that the Justice Department procedure in this case failed to meet the identification requirements of § 2518(1)(a), requiring suppression of the evidence obtained through the use of the tap. They base their challenge on the peculiar procedures that the Justice Department employed.

On November 18, 1971, Assistant United States Attorney George Kokus sought a wiretap authorization from the Honorable James Lawrence King of the United States District Court for the Southern District of Florida. Judge King authorized the wiretap on the premises of appellant Howard Pinder Sr. on the basis of the application and FBI Agent Keith Underwood's supporting affidavit. The application recited that Acting Assistant Attorney General Henry Petersen had authorized Mr. Kokus to seek the wiretap authorization, and that Attorney General Mitchell had specially designated Mr. Petersen to approve the application. In fact Attorney General Mitchell himself had approved the wiretap application.

We think that the Supreme Court decision in United States v. Chavez, 1974, 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 compels rejection of appellants' challenge. In *Chavez* the application recited that the Attorney General, pursuant to 18 U.S.C. § 2516, had specially designated Assistant Attorney General Will Wilson to authorize the applicant attorney to seek the wiretap order. In accordance with standard Justice Department procedure, Attorney General Mitchell had actually made the decision to approve the request, but the form letter communicating this approval recited that the Assistant Attorney General was the approving officer. The Supreme Court reversed a lower court decision excluding the wiretap evidence. The Court did not sanction the Justice Department procedure, but held that since the Attorney General himself had in fact authorized the wiretap, the evidence was still admissible. Justice White's majority opinion stated: "[W]e think it cannot be seriously contended that had the Attorney General been identified as the person authorizing the application, rather than his subordinate, Assistant Attorney General Wilson, the district judge would have had any greater hesitation in issuing the interception order." 416 U.S. at 572, 94 S.Ct. at

---

1. The government charged all appellants with a conspiracy under 18 U.S.C. § 371 to violate 18 U.S.C. § 1955. One count of the indictment also charged appellants Pinder and McCray with a substantive violation of § 1955.

2. Appellants conceded at trial that FBI Agent Underwood's testimony provided sufficient evidence to support a conviction. They claimed that his evidence was inadmissible because of the alleged illegality of the wiretap. Presumably the government did not have sufficient other evidence to support a conviction.

1855, 40 L.Ed.2d at 390–391. Since the misidentification of the officer authorizing the wiretap did not substantially and directly affect the fulfillment of the congressional intent behind Title III, the Court found the communications were not "unlawfully intercepted" within the meaning of 18 U.S.C. § 2518(10)(a)(i).[3]

Appellants attempt to distinguish *Chavez* on the basis that Henry Petersen was only an Acting Assistant Attorney General. Since § 2516 does not in terms allow Acting Assistant Attorneys General to authorize wiretap applications, the appellants claim the application here was facially invalid. We do not find any merit in the proposed distinction. It is true that the Supreme Court recently held that Title III does require suppression of wiretap evidence for certain nonconstitutional procedural defects. United States v. Giordano, 1974, 505 U.S. 416, 94 S.Ct. 1820, 40 L.Ed.2d 341. The *Giordano* Court stated:

> Congress intended to require suppression where there is failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device. We have already determined that Congress intended not

only to limit resort to wiretapping to certain crimes and situations where probable cause is present but also to condition the use of intercept procedures upon the judgment of a senior official in the Department of Justice that the situation is one warranting their use.

416 U.S. at 527, 94 S.Ct. at 1832, 40 L. Ed.2d at 360. Certainly the congressional intent is satisfied when the head of the Justice Department personally reviews the proposed application and determines that the situation is appropriate for employing this extraordinary investigative measure. The district court properly rejected this attack on the wiretap evidence. *See* United States v. Chavez, *supra* 416 at 574–579, 94 S.Ct. at 1856–1857, 40 L.Ed.2d at 392–394.

█ Appellants also claim that the government failed to show that other investigative procedures had been tried and failed or that they would not be reasonably likely to succeed or would be too dangerous as required by 18 U.S.C. § 2518(1)(c).[4] The authorizing judge relied on the affidavit of FBI Agent Underwood to determine the need for the wiretap. Appellants challenge the sufficiency of his affidavit on the grounds that: (1) it misrepresents his experience in bolita operations;[5] (2) surveil-

---

3. The "authorization" from Attorney General Mitchell to Henry Petersen carried a November 15, 1971 date. Mitchell submitted an affidavit to the court in another proceeding that stated that he never exercised his authority under 18 U.S.C. § 2516 to specially designate an Assistant Attorney General to authorize wiretap applications. Instead he personally reviewed almost all applications, then attached a form letter that indicated the Assistant Attorney General had approved the application. Appellants do not claim that Attorney General Mitchell did not personally review the application submitted to Judge King. *Cf.* United States v. Giordano, 1974, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341.

4. 18 U.S.C. § 2518(1)(c) provides: "Each application for an order authorizing or approving the interception of a wire or oral communication . . . shall include the following information:

(c) a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."
18 U.S.C. § 2518(3)(c) requires the judge issuing the order authorizing the interception to determine "on the basis of facts submitted by the applicant that—

(c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous."

5. Bolita is another term for a numbers operation. Runners on the street collect bets, and take them to a counting house. The winning number is generally determined from an outside source such as the Puerto Rican lottery (called "Puerto Rico") or from the numbers of the winning entries in the day's races at a horse or dog track.

lance by physical means or use of other undercover agents was possible; (3) the information sought was not essential to the investigation.

We first note that §§ 2518(1)(c) and (3)(c) must be read in a common sense fashion. They are "simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." United States v. Kahn, 1974, 415 U.S. 143, 153 n. 12, 94 S.Ct. 977, 983 n. 12, 39 L.Ed.2d 225, 236 n. 12. Their purpose "is not to foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques." United States v. Pacheco, 5th Cir. 1974, 489 F. 2d 554. The provisions contemplate that "the showing be tested in a practical and commonsense fashion." S.Rep.No. 1097, 90th Cong., 2d Sess., 100 U.S.Code Cong. & Admin.News 1968, pp. 2112, 2190. We think that both the government and the authorizing judge complied with the letter and the spirit of these provisions.

Agent Underwood's affidavit stated that he had had previous experience in investigating gambling offenses, and numbers operations in particular, for the past three years. Appellants claim this statement is misleading since the agent testified at trial that this was his first numbers investigation. Yet the agent actually testified that this was the first numbers investigation directly under his command, not the first he had participated in. The affidavit was not misleading in this respect.

Appellants' claim that the wiretap was unnecessary because physical surveillance was possible also fails. Agent Underwood testified that it would have been physically possible for him to institute surveillance of some of the minor figures involved. Yet he testified further that this would have been impractical because he was white, and the bolita operations were conducted in a black neighborhood. While he admitted it would have been possible to call in black undercover agents, it would have been costly and inconvenient. Applying the common sense reading of § 2518(1)(c), we do not think the statute required the FBI to call in other agents. *See* United States v. Kahn, *supra*; United States v. Pacheco, *supra*.

Appellants further contend that the main purpose of the electronic surveillance was to locate the source of the winning number. Since the agent testified at trial that this was nonessential information, they urge that the § 2518(1)(c) requirements are not met. But the appellants have quoted selected favorable portions of Agent Underwood's testimony. He also stated at trial that he needed the wiretap to determine the other members of the bolita operation, a clearly legitimate investigative purpose. We find the affidavit satisfied the government's burden under § 2518(1)(c). To hold otherwise would constitute unwarranted court interference with legitimate investigative discretion contrary to the congressional intent.

Appellants' final two contentions are that the court erred in failing to dismiss the conspiracy count of the indictment under the Wharton's rule principle,[6] and that the federal criminal statute prohibiting gambling is unconstitutional. As appellants' counsel noted on oral argument, this circuit has already determined these contentions adversely to his clients. United States v. Pacheco, *supra*. Therefore the convictions are affirmed.

---

6. "Wharton's rule affords a narrowly limited exception to the principle that conspiracy, as well as the substantive offense, may be prosecuted. That rule, as stated by the commentator whose name it bears, provides that 'when to the idea of an offense plurality of agents is logically necessary, conspiracy, which assumes the voluntary accession of a person to a crime of such a nature that it is aggravated by a plurality of agents cannot be maintained.' 2 F. Wharton, Criminal Law § 1604, at 1862 (12th ed. 1932)." United States v. Pacheco, 5th Cir. 1974, 489 F.2d 554, 558.