UNITED STATES of America,
Appellant,

v.

Anthony Joseph ACON et
al., Appellees.

No. 74–1766.

United States Court of Appeals,
Third Circuit.

Argued Dec. 12, 1974.

Decided March 6, 1975.

Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., John M. Elias, Jerome M. Feit, Marc Philip Richman, Washington, D. C., for appellant.

James K. O'Malley, Morris, Safier & Makoroff, H. David Rothman, Herbert Lebovitz, Thomas A. Livingston, John Doherty, Pittsburgh, Pa., John Hudacsek, Jr., Beaver Falls, Pa., for appellees.

Before ALDISERT, ADAMS and HUNTER, Circuit Judges.

OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

This court must decide whether wiretap authorizations signed by an acting assistant attorney general, not specifically qualified to approve electronic surveillance under 18 U.S.C. § 2516(1), must be suppressed as facially insufficient under 18 U.S.C. § 2518(10)(a)(ii). The government appeals suppression by the district court.[1] Because we believe that facial insufficiency in this case was an insubstantial violation of the Act, we reverse the district court's order and remand the case for consideration of other grounds

1. United States v. Acon, 377 F.Supp. 649 (W.D., Pa. 1974).

for suppression not yet reached by the court.[2]

## I.

 The district court for the Western District of Pennsylvania approved wiretap applications on December 9, and December 23, 1971. The applications submitted by the Organized Crime and Racketeering Section of the Justice Department were accompanied by authorization orders for electronic surveillance signed by Henry Petersen. Petersen was then Acting Assistant Attorney General.[3] A series of later applications dated January 18, 25 and February 9, 1972 showed authorization by Petersen who had subsequently been confirmed as Assistant Attorney General by the Senate.

As a result of information derived from this surveillance, Anthony Acon and three other defendants were indicted for conspiracy to conduct illegal gamblings, 18 U.S.C. §§ 371 and 1955, and Acon and five other defendants were indicted for conspiracy to obstruct the enforcement of Pennsylvania criminal laws, 18 U.S.C. § 1511. Defendants moved to suppress the evidence derived from the wiretaps on various grounds, only one of which was addressed by the district court's narrowly drawn opinion.

At the suppression hearing, the government presented affidavits and inter-office memoranda from both Petersen and former Attorney General John Mitchell. A March 4, 1973 affidavit from Mitchell states that although the authorization order was signed by Petersen, Mitchell had in fact given the authorization. A series of memoranda dated prior to each wiretap application, initialed by Mitchell, and giving approval for the wiretap, was introduced at the suppression hearing in support of Mitchell's more recent affidavit.[4] Henry Pet-

---

**2.** The district court did not reach suppression motions alleging an absence of probable cause to approve the initial wiretap application.

**3.** On the December 9 authorization, Henry Petersen's title was improperly given as Assistant Attorney General rather than *Acting* Assistant Attorney General. The government argues that because he was called an Assistant Attorney General in the December 9 order, that order was not facially insufficient. We decline to make any distinction on the basis of what Petersen was called. He was an acting officer and the sufficiency of the order will be judged accordingly.

**4.** The affidavit dated March 4, 1973 and signed and sworn by Mitchell states:

John M. Mitchell, being duly sworn, deposes and says:

I held the office of Attorney General of the United States from January 21, 1969, through March 1, 1972.

On December 8 and December 23, 1971, and on January 18, January 24, and February 7, 1972, I approved requests for authority to apply for interception orders in this matter and personally initialed memoranda of those dates reflecting my favorable action on the requests. I have examined the originals of these memoranda and certify that they bear my initials which were personally affixed to them by me on the above dates. Attached are copies of my personal-

ly initialed memoranda of those dates reflecting my favorable actions on the requests.

My memoranda of approval in this case constituted notification to the Assistant Attorney General of the Criminal Division that the discretionary action of approving each of the requests to make application to the court for an interception order had been taken by me.

There were five substantially identical inter-office memoranda from Mitchell to Petersen on which Mitchell's initials appeared. The December 8, 1971 memorandum states:

This is with regard to your recommendation that authorization be given to Thomas A. Bergstrom, Special Attorney, Pittsburgh Strike Force, to make application for an Order of the Court under Title 18, United States Code, Section 2518, permitting the interception of wire communications for a fifteen (15) day period to and from telephone numbers 412–774–8488 and 412–774–1821, both located at 390 Pennsylvania Avenue, Rochester, Pennsylvania, and 412–643–4396 and 412–643–8168, both located at 757 Virginia Avenue, Midland, Pennsylvania, in connection with the investigation into possible violations of Title 18, United States Code, Sections 1955 and 371, by Anthony "Tony" Acon, Rockliffe "Rocky" Fritz, Robert "Bobby" Ciamacco, Charles Belas, Madeleine "Mad" D'Angelo, also known as Mrs. Louis Dangelo and also known as Mrs. Lewis D'Angelo and others known and others as yet unknown.

ersen also submitted an affidavit which stated that, although he had reviewed the supporting papers, Mitchell had in fact given approval in each case. Petersen's signature was affixed only after Mitchell's approval of each application.[5]

Although defendants challenged the allegedly institutional character of Mitchell's approval under 18 U.S.C. § 2518(10)(a)(i), the district court did not reach this issue.[6] The suppression order was based solely on grounds of facial insufficiency under § 2518(10)(a)(ii).[7]

## II.

Congress set out detailed procedures for obtaining electronic surveillance approval in Title III of the Omnibus Crime Control and Safe Streets Act of 1968. 18 U.S.C. §§ 2510–2520. 18 U.S.C. § 2516(1)[8] provides that the Attorney General or a specially designated Assistant Attorney General must authorize every wiretap application submitted for approval to the district court. 18 U.S.C. § 2518, in turn, sets out the information which must be contained in the application. §§ 2518(1)(a) and 2518(4)(d), for example, specifically require that the identity of the authorizing officer be stated in the application. Suppression of evidence derived from electronic surveillance is allowed when the communication has been unlawfully intercepted, § 2518(10)(a)(i), or when the order of authorization or approval is insufficient on its face, § 2518(10)(a)(ii).[9]

> Pursuant to the powers conferred on me by Section 2516 of Title 18, United States Code, you are hereby specifically designated to exercise those powers for the purpose of authorizing Thomas A. Bergstrom to make the above-described application.

5. Petersen's sworn affidavit, dated March 15, 1973, describes a procedure whereby special units of the Organized Crime and Racketeering Section of the Justice Department requested wiretaps. The requests were processed through various levels of the Criminal Division of the Justice Department. The affidavit states, based on staff recommendations, the Attorney General approved each wiretap. Petersen then signed the order submitted to the district court at the Attorney General's request.

6. Although not reaching this issue, the district court did question the sufficiency of these memoranda and affidavits to show authorization. The court expressed doubts about "the propriety of relying on these affidavits [to show authorization] which themselves contradict the actual language of the designation memoranda . . . ." 377 F.Supp. at 652.

Despite the deviation by the Justice Department from the authorization procedures contemplated by the statute, several cases have held that papers, substantially identical to these were sufficient authorization. The sufficiency of identical papers was not questioned by the Supreme Court in United States v. Chavez, 416 U.S. 562, 569 n. 2, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974). Although not reproduced in the Supreme Court opinion the papers relied on by the Court are reproduced in United States v. Chavez, 478 F.2d 512, 514 (9th Cir., 1972).

Substantially identical procedures were deemed sufficient by this Court in United States v. Ceraso, 467 F.2d 647, 651 (3d Cir., 1972). See United States v. Becker, 461 F.2d 230 (2nd Cir., 1972), United States v. Cox, 462 F.2d 1293 (8th Cir., 1972).

7. Three later wiretaps were suppressed although Petersen was an Assistant Attorney General when he signed these authorizations. Despite facial sufficiency, suppression was predicated on a showing that supporting affidavits presented information derived from the earlier invalid wiretaps.

8. 18 U.S.C. § 2516(1) provides:

> The Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for, . . . an order authorizing or approving the interception of wire or oral communications . . . ..

9. Evidence obtained in violation of Title III may not be used according to 18 U.S.C. § 2515 which provides:

> Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial . . . if the disclosure of that information would be in violation of this chapter.

Suppression sanctions for improperly intercepted communications are included in 18 U.S.C. § 2518(10)(a):

> (10)(a) Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any intercepted wire or oral communica-

Defendants assert that an *acting* assistant attorney general cannot be designated specially under § 2516(1) to authorize wiretaps. With this point, we agree. Defendants argue further that any authorization order *signed* by an improper person is facially insufficient and, therefore, subject to suppression under § 2518(10)(a)(ii). They assert that suppression for facial insufficiency is required even if authorization was actually given by a person properly qualified under § 2516(1).

In light of the technical nature of this facial insufficiency, we cannot agree that suppression is required under these circumstances.

## DESIGNATION TO AUTHORIZE UNDER § 2516(1)

■ In United States v. Giordano, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), the Supreme Court held that only the Attorney General and the nine assistant attorneys general who were "responsive to the political process . . ." could authorize wiretaps under § 2516(1). 416 U.S. at 520, 94 S.Ct. 1820 citing S.Rep. No. 1097, 90th Cong., 2nd Sess. 96–97 (1968), 2 U.S.Code Cong. and Admin.News, p. 2185 (1968). "Political responsiveness" in the Court's view, was achieved by presidential appointment and Senate confirmation, 416 U.S. at 520 n. 9, 94 S.Ct. 1820. In *Giordano,* improper authorization by the attorney general's executive assistant rendered the in-

terception unlawful and subject to suppression under § 2518(10)(a)(i). According to the Court, Congress sought to restrict the use of electronic surveillance by restricting the power to authorize wiretaps to a small group of senior Justice Department officials. Violations of the significant provision, therefore, were sufficient to warrant suppression.

In the present case, the government argues that an acting assistant attorney general is not the same as the attorney general's executive assistant.[10] Although for other purposes this may be true, we cannot agree in this context. Congress has created a very narrow and specific authorization power. An acting assistant attorney general is not mentioned in the statute. Neither does an acting assistant attorney general meet the Supreme Court's test of political responsiveness. As such, an acting assistant attorney general who has not been appointed by the President and confirmed by the Senate, may not be designated specially to authorize wiretaps under § 2516(1).

## FACIAL SUFFICIENCY

In the instant case, however, we are not dealing with an *authorization* by an acting assistant attorney general. We are dealing with a *signature* on the authorization order placed there by an unqualified person.

In United States v. Chavez, 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974),

---

tion, or evidence derived therefrom, on the grounds that—

 (i) the communication was unlawfully intercepted;

 (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or

 (iii) the interception was not made in conformity with the order of authorization or approval. (not relevant here).

**10.** The government cites 28 C.F.R. 0.132(d) (1974) which provides that in the event of a vacancy, a ranking department head, such as an acting assistant attorney general "shall perform the functions and duties and act as" an assistant attorney general. The government argues that unless vacancies can be filled by fully qualified persons, the govern-

ment will grind to a halt while Senate approval is pending. This argument ignores the fact that there are nine assistant attorneys general and the fact that this statute is very specific in its limitations. The logic of Title III need not necessarily apply to all activities by an acting assistant attorney general. Several district court opinions have held that an acting officer is outside the scope of § 2516(1). United States v. Narducci, 341 F.Supp. 1107 (E.D.Pa., 1972), United States v. Boone, 348 F.Supp. 168 (E.D.Va., 1972).

We note but decline to follow a contrary holding in United States v. Pellicci, 504 F.2d 1106 (1st Cir., 1974) cert. denied 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 821 (1974) and United States v. Vigi, 350 F.Supp. 1008 (E.D. Mich. 1972).

the Supreme Court held that where the attorney general had authorized a wiretap, suppression was not required merely because the authorization was signed by someone else. The Court in *Chavez* clearly distinguished between suppression under § 2518(10)(a)(i) and (10)(a)(ii). Neither (i) nor (ii) supplied grounds for suppression in *Chavez*. The Court held that misidentification of the authorizing officer violated the identification requirements of § 2518(1)(a) and § 2518(4)(d). Because the purpose of these sections was merely to fix responsibility, they did "not establish a substantive role to be played in the regulatory system." *Chavez*, 416 U.S. at 578, 94 S.Ct. at 1857. As such the violation was technical; the interception was not unlawful and suppressable under (10)(a)(i) since the authorization had been given by a person qualified under § 2516(1).

The Court also specified that the authorization order was sufficient on its face since the signatory, assistant attorney general, Will Wilson, could have been designated specially to authorize under § 2516(1).

The instant case is clearly distinguishable from *Chavez*, however. Here the defendants attack not misidentification under (10)(a)(i) but the facial sufficiency under (10)(a)(ii) of an order signed by an improper person.[11]

*Giordano* and *Chavez* recognize that suppression under (10)(a)(i) is not required for every technical violation. Only "where there is failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures," *Giordano*, 416 U.S. at 527, 94 S.Ct. at 1832, is suppression required under § 2518(10)(a)(i). Defendant-appellees argue that § 2518(10)(a)(ii), in contrast, applies irrespective of whether substantial limitations of the Act are violated.

In support of this point, they cite language from *Giordano*: "Paragraphs (ii) and (iii) [of § 2518(10)(a)] must be deemed to provide suppression for failure to observe some statutory requirements that would not render interceptions unlawful under paragraph (i)." 416 U.S. at 527, 94 S.Ct. at 1832. This language does imply that paragraphs (ii) and (iii) must reach violations of some provisions of Title III which do not directly and substantially implement the congressional intent to limit use of wiretaps. Despite this intention to extend (10)(a)(ii) further than (10)(a)(i), we do not conclude that suppression is required for every minor facial insufficiency.

There is a distinction in the kinds of information which must be supplied to the approving judge. Clearly, the name of the authorizing officer is less important than statements of fact which must be submitted under § 2518(1)(b). Unless the judge is properly apprised of the facts, he cannot make an appropriate probable cause determination as required by § 2518(3). In contrast, the name of the authorizing officer is not as likely to affect the judge's determination that a wiretap is or is not warranted.

In *Giordano* and *Chavez*, the Supreme Court examined affidavits which varied the submitted identification information. Clearly, an aggrieved party may impeach the information submitted by the government to the approving court. In *Giordano*, this occurred. In *Chavez*, however, the government was allowed to vary the identification information after it had been shown by the party attacking the wiretap that the signatory had not in fact given approval. The government was then allowed to show that a proper party, then Attorney General Mitchell, had approved the wiretap. That the government was allowed to

---

11. Relying solely on *Chavez*, the Fifth Circuit has held on identical facts that suppression is not required. United States v. Robertson, 504 F.2d 289 (5th Cir., 1974). The Court in *Robertson* considered only the issue of misidentification as a suppression ground under (10)(a)(i). Suppression for facial insufficiency under (10)(a)(ii) was not raised in that opinion.

vary the identification information submitted to the approving court, supports our conclusion that this requirement is less important than others. The government certainly would not be allowed to amplify the facts presented on the face of the affidavit to the district court in order to improve the district court's finding of probable cause, United States v. Ceraso, 467 F.2d 647, 653 (3d Cir., 1973).

█ We perceive a distinction between information which the government may vary by subsequent affidavit and information which must stand on the four corners of the affidavit. Based on this difference, we conclude that suppression is not required for facial insufficiency relating to less critical requirements which may be varied by subsequent affidavits. The identification directives in our opinion fall within this category.

Although the identification requirements were designed to fix responsibility on the person actually authorizing the wiretap,[12] Justice Department practice regrettably has frustrated this purpose.

During Mitchell's tenure as Attorney General the person signing the authorization order had rarely authorized the wiretap; and quite often even the person whose name appeared on the order had not actually signed it. Instead anonymous assistants affixed a name in what had become a purely ministerial act.[13] In United States v. Ceraso, 467 F.2d 647, 649 (3d Cir., 1972), for example, this court did not disapprove an order to which the assistant attorney general's name had been affixed by an underling. Thus, if Petersen had signed Mitchell's name rather than his own, earlier cases would mandate rejection of a (10)(a)(ii) suppression motion. We do not feel that a different result should obtain merely because Petersen signed his own name.

Support for our view that (10)(a)(ii) suppression is not required for every minor insufficiency is derived from a recent Second Circuit case. In United States v. Cirillo, 499 F.2d 872 (2nd Cir., 1974), cert. denied 419 U.S. 1056, 95 S.Ct. 638, 42 L.Ed.2d 653 (1974),[14] New York

12. In *Chavez,* the Supreme Court explored the purposes of the identification requirements. Although made in the context of (10)(a)(i), the analysis is also relevant to (10)(a)(ii).

Requiring identification of the authorizing official in the application facilitates the court's ability to conclude that the application has been properly approved under § 2516; requiring identification in the court's order also serves to "fix responsibility" for the source of preliminary approval. This information contained in the application and order further aids the judge in making reports required under 18 U.S.C. § 2519. That section requires the judge who issues or denies an interception order to report his action and certain information about the application, including the "identity of . . . the person authorizing the application," within 30 days, to the Administrative Office of the United States Courts, § 2519(1)(f). An annual report of the authorizing officials designated in § 2516 must also be filed with that body, and is to contain the same information with respect to each application made as is required of the issuing or denying judge, § 2519(2)(a). Finally, a summary of the information filed by the judges acting on applications and the prosecutors approving their submission is to be filed with Congress in April of each

year by the Administrative Office, § 2519(3). The purpose of these reports is "to form the basis for a public evaluation" of the operation of Title III and to "assure the community that the system of court-order[ed] electronic surveillance . . . is properly administered. . . ." S.Rep. No. 1097, 90th Cong., 2d Sess., 107. While adherence to the identification reporting requirements of §§ 2518(1)(a) and (4)(d) thus can simplify the assurance that those who Title III makes responsible for determining when and how wiretapping and electronic surveillance should be conducted have fulfilled their roles in each case, they do not establish a substantive role to be played in the regulatory system. (Footnotes deleted). 416 U.S. at 575–8, 94 S.Ct. at 1856.

13. On the diminished importance of the signature see *Giordano,* 416 U.S. at 525 n. 14, 94 S.Ct. 1820; United States v. Falcone, 505 F.2d 478 (3d Cir., 1974); United States v. Iannelli, 477 F.2d 999, 1001 (3d Cir., 1973).

14. For other cases finding *technical* violations of wiretap statutes see United States v. Rizzo, 492 F.2d 443, 446 (2nd Cir., 1973), United States v. Manfredi, 488 F.2d 588, 598 (2nd Cir., 1973), United States v. Poeta, 455 F.2d 117 (2nd Cir., 1972).

In a somewhat analogous situation, Judge Friendly found technical defects in a search

state and federal law enforcement officials joined to investigate an organization of narcotics dealers. Wiretap approval was secured from a New York state court. Despite the fact that the New York wiretap statute requires minimization directive to be included in every wiretap order, the Second Circuit refused to overturn a federal conviction based on wiretap evidence derived from an order failing to include such a directive. The court accepted affidavits from officers who executed the order stating that minimization had occurred despite the absence of a minimization order. Although the wiretap order was facially insufficient, suppression was not required.

The court, in an opinion by Judge Mansfield, concluded that the defect was technical since there had been substantial compliance with the statute.[15] 499 F.2d at 880 citing Smith v. United States, 360 U.S. 1, 79 S.Ct. 991, 3 L.Ed.2d 1041 (1959) (deficiencies are technical where no substantial rights are involved.)

In this case we believe the facial insufficiency was technical for two reasons. Mitchell had actually approved the wiretap so that there was substantial compliance with the statute. Only the less crucial identification requirements were actually breached.

### III.

For the foregoing reasons the district court's order of suppression will be reversed and the case remanded for consideration of the other grounds for suppression not yet reached by the district court.

ADAMS, Circuit Judge (concurring):

I concur in the result reached by the majority.

Like Judge Hunter, I conclude that evidence derived from a court-approved wiretap may not be suppressed under 18 U.S.C. § 2518(10)(a)(ii) where, as here, the wiretap has in fact been authorized by a Justice Department official empowered to do so under 18 U.S.C. § 2516(1), and the only defect in the authorization procedure is in the identification of the authorizing officer.

Since the then Attorney General authorized the challenged wiretaps, I find it unnecessary to decide the further legal question whether an Acting Assistant Attorney General is "responsive to the political process"[1] and thus empowered by 28 U.S.C. § 2516(1) to authorize wiretaps.

---

warrant. The court applied Rule 52(a), F.R. Cr.P. to the defective warrant, in a holding which denied suppression on grounds of harmless error. United States v. Ravich, 421 F.2d 1196 (2nd Cir., 1970).

**15.** We do not necessarily support the Second Circuit's view that failure to include a mini-

mization order is a minor facial insufficiency. We cite the case for the proposition that there can be facial insufficiency which is technical, and, therefore, insufficient to require suppression.

**1.** United States v. Giordano, 416 U.S. 505, 520, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974).