**UNITED STATES of America**

v.

**Steven BAKER and John Hatcher, Defendants.**

**No. 77 Cr. 190 (HFW).**

United States District Court,
S. D. New York.

Aug. 22, 1977.

528

Robert B. Fiske, Jr., U. S. Atty., New York City by Robert B. Mazur, Asst. U. S. Atty., New York City, for plaintiff.

Russo & Dubin, New York City, for defendant Steven Baker.

Greenfield & Koppelman, New York City by Robert Koppelman, New York City, of counsel, for John Hatcher.

## MEMORANDUM DECISION

WERKER, District Judge.

On February 9, 1977, the Honorable Charles H. Tenney, District Judge, issued an order authorizing the Government to engage in electronic surveillance of the outside and adjacent inside offices of the Harlem Rivers Motor Garage (the "Garage"), located at 112 West 145th Street, New York, New York. Pursuant to that order, a "bug" was surreptitiously placed in the office of the Garage agents for a period of thirteen days ending March 1, 1977. Defendants Steven Baker and John Hatcher have now moved to suppress on various grounds all evidence obtained by means of that court-authorized interception.[1]

The Government may only intercept conversations in private settings if it has complied with the terms of Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (the "Act"), 18 U.S.C. § 2510, *et seq.* (1970), which was enacted in order to safeguard innocent persons from unwarranted intrusions of their privacy. *See*

---

1. Certain other aspects of the Hatcher motion have already been resolved. Thus, Hatcher's motion for an audibility hearing was granted on consent, and his motion for the production of additional eavesdropping orders and affidavits was denied. See Transcript of May 2, 1977 Pre-Trial Conference at 5–7.

Pub.L. No. 90–351, § 801(d), 82 Stat. 211–12 (1968). The Act requires that an applicant for an order authorizing electronic surveillance provide a "full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c) (1970). A judge may then enter an *ex parte* order authorizing an interception if he finds, based upon facts submitted by the applicant, that "normal" investigative procedures have been exhausted, or that they would not succeed or would prove to be too dangerous if attempted. *Id.* 2518(3)(c).

In the instant action, the Government submitted a 54 page affidavit by Special Agent Michael Pavlick of the Drug Enforcement Administration to support its conclusion that interception of oral communications at the Garage was justified. Baker contends that suppression is required because Pavlick's affidavit is replete with false averments regarding the impracticability of alternative investigative tools. Although the motion must be denied as untimely,[2] the court will nevertheless explain why the relief requested would be denied even if the motion had been filed within the required time.

Baker's motion papers attempt to demonstrate contradictions in Pavlick's affidavit, and between the affidavit and the indictment, when in reality no such contradictions exist. For example, the affidavit recites that the investigators needed to intercept oral communications at the Garage in order to prove beyond a reasonable doubt that Leroy Barnes was the supervisor of a continuing criminal enterprise and to determine and establish the guilt of all other persons involved in the alleged conspiracy to violate the federal narcotics laws. Since Pavlick conceded that two of the Government's informants had direct contact with Barnes, Baker argues that they "presumably" would be able to state from personal knowledge how Barnes directed or supervised a continuing criminal enterprise. But Pavlick also stated in his affidavit that Barnes never told either informant about his sources for narcotics or about "aspects of his narcotics business that the particular informant had no need to know." Indeed, Pavlick observed further that all but Barnes' most senior associates had limited knowledge of his business activities in areas other than those with which they were concerned. Accordingly, when the affidavit is viewed in a practical and commonsense fashion, *see United States v. Schwartz,* 535 F.2d 160, 163 (2d Cir. 1976); S.Rep. No. 1097, 90th Cong., 2d Sess., *reprinted in* [1968] U.S.Code Cong. & Ad.News, 2190, it is evident that there is no inconsistency between the informants' limited successes and Pavlick's assertion that other investigative procedures would not be adequate to establish those offenses which allegedly had occurred. Baker's unsupported assumptions are simply not enough to refute Pavlick's sworn statement of the facts.

Similarly, Baker maintains that the court need only compare the indictment with the affidavit to see that, contrary to Pavlick's assertions, the full scope of the enterprise and conspiracy and the names of the persons involved were known at the time that Pavlick's affidavit was sworn. However, the court cannot conclude that the eavesdropping was unnecessary merely because it did not lead to additional defendants being named. Baker has demonstrated only that the Government's surveillance activities were less than totally successful; that is not enough to undercut Judge Tenney's finding that other means would not have achieved the Government's legitimate investigative goals.

---

2. At a pre-trial conference held on April 6, 1977, the court directed that all pre-trial motions be made within 10 days after counsel gained access to the materials upon which such motions were based. Copies of the Government's tape recordings were made available on April 9, 1977 and counsel for Baker received a copy of the Government's application for an eavesdropping warrant the following day. However, Baker's suppression motion was not filed until May 4, 1977, more than three weeks after it first could have been filed.

■ The court will not recount Baker's remaining theories regarding the availability of alternative investigative techniques, for the Government's representations to Judge Tenney are not contradicted by the limited success of earlier efforts to gain evidence of the defendants' operations, *see United States v. James,* 161 U.S.App.D.C. 88, 494 F.2d 1007, 1016, *cert. denied sub nom. Tantillo v. United States,* 419 U.S. 1020, 95 S.Ct. 495, 42 L.Ed.2d 294 (1974); *United States v. Pacheco,* 489 F.2d 554, 565 (5th Cir. 1974), *cert. denied,* 421 U.S. 909, 95 S.Ct. 1558, 43 L.Ed.2d 774 (1975); *United States v. Caruso,* 415 F.Supp. 847, 851–52 (S.D.N.Y.1976), or the remote possibility that other investigative paths might lead to the desired evidentiary result, *United States v. Smith,* 519 F.2d 516, 518 (9th Cir. 1975); *United States v. Robertson,* 504 F.2d 289, 293 (5th Cir. 1974), *cert. denied,* 421 U.S. 913, 95 S.Ct. 1568, 43 L.Ed.2d 778 (1975); *United States v. Pacheco,* 489 F.2d at 565. And Baker will not be granted a hearing to test the truth of Pavlick's averments, as has been requested, since none of the "contradictions" relied upon in his motion papers establishes that any of the statements in Pavlick's affidavit were false. *United States v. Steinberg,* 525 F.2d 1126, 1131 (2d Cir. 1975), *cert. denied,* 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976); *see United States v. Dunnings,* 425 F.2d 836, 840 (2d Cir. 1969), *cert. denied,* 397 U.S. 1002, 90 S.Ct. 1149, 25 L.Ed.2d 412 (1970).

■ Hatcher and Baker also contend that suppression must be granted because the Government failed to comply with the statutory requirement that electronic surveillance be conducted "in such a way as to minimize the interception of communications not otherwise subject to interception," 18 U.S.C. § 2518(5) (1970), and request a hearing if necessary to determine whether "minimization" of innocent conversations was properly carried out. But it is the established rule that only those whose fourth amendment rights have been violated have standing to object to the introduction into evidence of the product of an improperly executed search. *Alderman v. United States,* 394 U.S. 165, 171–72, 89 S.Ct.

961, 22 L.Ed.2d 176 (1969). Fourth amendment rights are not implicated merely because evidence obtained by such a search will be introduced against a given defendant unless he also has some legitimate expectation of privacy which was invaded by the search. *Alderman v. United States,* 394 U.S. at 171–72, 89 S.Ct. 961; *Jones v. United States,* 362 U.S. 257, 261, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *United States v. Pui Kan Lam,* 483 F.2d 1202, 1205 (2d Cir.), *cert. denied,* 415 U.S. 984, 94 S.Ct. 1578, 39 L.Ed.2d 881 (1973).

■ The court must therefore consider whether Hatcher or Baker has the requisite interest. Several Second Circuit decisions have limited standing in wiretap cases to either telephone subscribers or persons residing at the premises involved. *See United States v. Fury,* 554 F.2d 522, 525–26 (2d Cir. 1977) (appellant lacked standing to suppress information obtained by wiretaps on telephones of co-defendant and third party); *United States v. Hinton,* 543 F.2d 1002, 1011–13 n.13 (2d Cir. 1976), *cert. denied,* 430 U.S. 982, 97 S.Ct. 1677, 52 L.Ed.2d 376 (1977) (appellant may have had standing to challenge wiretap at her residence, but not wiretap on telephone in apartment where she did not reside); *United States v. Poeta,* 455 F.2d 117, 122 (2d Cir.), *cert. denied,* 406 U.S. 948, 92 S.Ct. 2041, 32 L.Ed.2d 337 (1972) (appellant lacked standing to suppress conversations intercepted by wiretap on co-defendant's telephone). By analogy to these cases, the Government argues that only the owner or lessee of the Garage, as the counterpart of the telephone subscriber, would have an expectation of privacy giving rise to standing to object to the introduction of the conversations here. But the court considers this conclusion wrong—both as a matter of law and on the facts. As the Supreme Court noted in *Jones v. United States,* 362 U.S. 257, 266, 80 S.Ct. 725, 733, 4 L.Ed.2d 697 (1969), "it is unnecessary and ill-advised to import into the law surrounding the constitutional right to be free from unreasonable searches and seizures subtle distinctions . . . of private property law . . . whose validity is largely his-

torical." Rather, the court should look to the circumstances surrounding the interception to determine whether they legally justify any expectation of privacy by the defendants concerned. *United States v. Pui Kan Lam,* 483 F.2d at 1206. In this regard, each defendant has the initial burden of showing some privacy interest which gives him standing to challenge the Government's efforts to offer the intercepted conversations into evidence. *Jones v. United States,* 362 U.S. at 261, 80 S.Ct. 725; *United States v. Sacco,* 436 F.2d 780, 784 (2d Cir.), *cert. denied,* 404 U.S. 834, 92 S.Ct. 116, 30 L.Ed.2d 64 (1971); *United States v. Wood,* 270 F.Supp. 963, 966–67 (S.D.N.Y.1967). The court concludes that Hatcher has met this burden but that Baker has not.

▉ Hatcher concedes by affidavit of his counsel that he is, as the Government contends, the manager of the Garage. Although the court is unable to determine how many persons used the office of the Garage or how restricted access to the office may have been, the Government application for the eavesdropping order expressly stated that the Garage "would not deal with the general public" and suggests throughout that only a select few were allowed to use the Garage office for business or personal discussions. Under similar circumstances, the Supreme Court held that an officer of a union had fourth amendment standing to challenge the introduction into evidence of papers seized from an office which he shared with several of his co-workers. *Mancusi v. DeForte,* 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968). Indeed, the Supreme Court noted that neither a legal interest in the searched premises nor absolute privacy was necessary in order to find that a defendant had a reasonable expectation of freedom from governmental intrusion. *Id.* at 369–70, 88 S.Ct. 2120. The court therefore finds that Hatcher could reasonably expect privacy in the Garage office and holds that he has standing to seek suppression of the conversations

intercepted pursuant to the court-authorized "bug."

▉ Baker, on the other hand, alleges no interest meriting protection under the fourth amendment; rather, his complaint is only that he may have been overheard during the course of surveillance activities which were not properly minimized.[3] Even if that contention is accepted, Baker is not entitled to suppress any conversations which may have been recorded, for the exclusionary rule has not been expanded to permit one person to advance the legitimate fourth amendment interests of others. *Alderman v. United States,* 394 U.S. at 171, 89 S.Ct. 961.

▉ Turning to the substance of the Hatcher motion to suppress on minimization grounds, it is his contention that "a hearing must be held to determine whetther [*sic*] or not the agents conducted the interception in such a way as to minimize the interception of communications not subject to the authorization." However, the court will not order a hearing at this time. While the Government must make a *prima facie* showing of compliance with the statute, *United States v. Rizzo,* 491 F.2d 215, 217 n.7 (2d Cir.), *cert. denied,* 416 U.S. 990, 94 S.Ct. 2399, 40 L.Ed.2d 769 (1974), it has represented to the court that it will be able to meet this burden by submitting a further affidavit, tape recordings and the logs of its agents. *See United States v. Cirillo,* 499 F.2d 872, 880–81 (2d Cir.), *cert. denied,* 419 U.S. 1056, 95 S.Ct. 638, 42 L.Ed.2d 653 (1974). The Government is therefore directed to submit its documentary evidence by August 29, 1977. If the Government's papers and other exhibits, in fact, make the requisite showing, defendant Hatcher will then be given 10 days to indicate how further minimization of innocent conversations could have been achieved. Unless Hatcher is able to make some such showing, no hearing on minimization will be held. *United States v. Cirillo,* 499 F.2d at 880; *United States v. Manfredi,* 488 F.2d 588, at 600–01 (2d Cir.).

---

**3.** Pavlick's affidavit merely recites that Government informants and agents saw Baker in the Garage on several occasions. Pavlick Affid. at ¶ 62. It does not suggest that Baker had any interest in the Garage.

▮ Finally, Baker's motion for a hearing on the question of compliance with the sealing requirements of the Act, 18 U.S.C. § 2518(8)(a) (1970) is hereby denied. The Government's prior papers establish that it complied with the statutory safeguards and no showing of impropriety has been made.

SO ORDERED.