UNITED STATES of America,
Plaintiff-Appellee,

v.

Violet Josephine FELDMAN,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Irving HYMAN, Defendant-Appellant.

Nos. 75-1303, 75-1526.

United States Court of Appeals,
Ninth Circuit.

May 5, 1976.

Rehearing and Rehearing En Banc
Denied June 23, 1976.

Arthur Lewis (argued), Los Angeles, Cal., for appellant Feldman.

Sull Lawrence (argued), Beverly Hills, Cal., for appellant Hyman.

Stuart W. Rudnick, Sp. Atty. (argued), Los Angeles, Cal., for plaintiff-appellee.

## OPINION

Before CARTER, GOODWIN and KEN-NEDY, Circuit Judges.

JAMES M. CARTER, Senior Circuit Judge:

The defendants were charged below with violation of 18 U.S.C. § 1955 (illegal gambling business) and of 18 U.S.C. § 2 (aiding and abetting), were convicted in a non-jury trial and sentenced. Their appeals have been consolidated.

Each defendant made a motion to suppress evidence obtained by a court-authorized electronic surveillance of telephone calls. On appeal they urge that under 18 U.S.C. § 2516 and § 2518(1)(c) and (3)(c) the trial court erred in denying the motion to suppress.

We affirm.

## CONTENTIONS ON APPEAL

1. That the affidavits in support of the order for electronic surveillance failed to satisfy the requirements of 18 U.S.C. § 2518(1)(c) and (3)(c) that there be a showing that other investigative techniques had been tried and failed or that they would be reasonably unlikely to succeed if tried or would be too dangerous.

2. That the showing that confidential informants had refused to testify in court proceedings was insufficient.

3. That the affidavits in support of the order for electronic surveillance were defective in that they did not meet the two-pronged test of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

4. That the affidavits did not establish probable cause for the issuance of a search warrant; therefore, they were insufficient to support an order for electronic surveillance of telephones.

5. That the Assistant Attorney General authorizing the electronic surveillance did not comply with 18 U.S.C. § 2516 in that there is no showing that he arrived at his decision only after a careful evaluation and screening of the request.

6. That the order for surveillance was applied improperly to public telephones.

7. That the interception of intrastate telephone calls violated 18 U.S.C. § 2517(4) since the Constitution of California and its Penal Code made the calls privileged communications within 18 U.S.C. § 2517(4).

8. That 18 U.S.C. § 1955 is unconstitutional.

9. That Title III (18 U.S.C. §§ 2510–2520) is unconstitutional.

## THE FACTS

The facts at trial were obtained from the wiretapped conversations, a written stipulation, the testimony of F.B.I. Agent Cross and of defendant and accomplice Zambros, who was granted immunity. That evidence revealed a large-scale bookmaking operation in metropolitan Los Angeles during the 1973 football season, including daily wagers often exceeding $2,000. Hyman occasionally assisted in the day-to-day management of the operation, but he and Feldman served primarily as "agents" who relayed bets to the appropriate "front". If the bettor won, the agent would pay him; if he lost, the agent would collect from him. The taped conversations helped to verify Zambros' identification of the defendants as active agents in the operation.

There were four other defendants below. The charges against *Farkas* were dismissed as part of a plea bargain after he pled guilty to charges in a related case. *Eisenberg* and *Hanft* pled guilty prior to trial. *Zambros* was granted immunity and appeared as a government witness.

## I.

### *Section 2518(1)(c) and (3)(c) Were Satisfied.*

Defendants first contend that the affidavits of Special Agent Charles B. Walker did not satisfy the requirement of 18 U.S.C.

**1178**

§ 2518(1)(c)[1] (describing the application for a court order) of

"a full and complete statement as to whether or not other investigative procedures have been tried and failed *or why they reasonably appear to be unlikely to succeed if tried* or to be too dangerous;" (emphasis added)

The argument is two-fold: (1) that the affidavits recite the insufficiency of alternative procedures in gambling prosecutions *in general,* whereas the statute requires that the alternatives must have failed or be likely to fail *in the particular case at hand;* and (2) that the other allegations in the affidavits reveal that other methods would have worked in the present case.

The first part of the argument is interesting and is persuasive that law enforcement agencies may not rely upon the general difficulty of apprehending and convicting bookmakers to justify the use of wiretapping. But that issue need not be reached because the affidavits of Special Agent Walker clearly indicate that numerous alternative procedures were either tried or reasonably rejected *in this case.* The affidavits indicate that (1) confidential sources One through Six refused to testify in court proceedings; (2) physical surveillance had been tried and was continuing, but was unsuccessful in establishing the necessary elements of the crime with respect to most of the participants; (3) the nature of *this* operation was such that apprehension by means of infiltration, phone spots, codes, floating field lieutenants, or use of telephones with limited toll record outputs, was highly unlikely, particularly since the operation would most likely be dissolved at the close of the football season, thereby precluding some lengthy and cumbersome procedures which might otherwise be employed.

Defendant Feldman suggests some ways in which surveillance, infiltration, etc.

*might work.* She cites no authority, however, entitling her to second-guess the F.B.I. and invalidate a warrant authorizing wiretaps by suggesting a number of possible alternatives reasonably discarded as not feasible by those in charge of the investigation.

This circuit has upheld the validity of an affidavit similar to the one in our case, stating " . . . the law does not require that a wiretap be used only as a last resort." *United States v. Kerrigan,* 514 F.2d 35, 38 (1975), *cert. den. sub nom. Karrigan v. United States,* 423 U.S. 924, 96 S.Ct. 266, 46 L.Ed.2d 249 (1975). *United States v. Smith,* 519 F.2d 516 (9 Cir. 1975) states:

"Congress, in its wisdom, did not attempt to require 'specific' or 'all possible' investigative techniques before orders for wire taps could be issued. As *United States v. Giordano,* 416 U.S. 505 at 515, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974) states— wiretap 'procedures were not to be routinely employed as the initial step in criminal investigations,' but it is equally true 'that the statute does not require the government to use a wire tap only as a last resort.' *United States v. Kerrigan [supra ], United States v. Staino,* 358 F.Supp. 852, 856–7 (E.D.Pa.1973)."

*United States v. Turner,* 528 F.2d 143 (9 Cir. 1975) states, after quoting 18 U.S.C. § 2518(1)(c):

"In this respect the affidavits in support of the applications stated that Ethridge was suspicious of being followed by law-enforcement officers; that the Kinglet Drive and Blue Heights residences were located on single-lane roads in mountainous areas, making undetected visual observations extremely difficult; that informants were unwilling to testify against Ethridge for fear of retaliation; that Ethridge's unwillingness to deal with strangers precluded undercover infiltration of his organization; that while

---

1.  18 U.S.C. § 2518(3)(c) relates to the matters to be considered by the judge in making his determination of the application. It reads:

"(c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;".

agents had knowledge of Ethridge's involvement, they had been unable, by resort to normal investigative procedures, to obtain evidence to convict him and the other members of his organization.

"In our judgment these affidavits provided that necessary 'factual basis,' *see United States v. Kerrigan,* 514 F.2d 35, 38 (9th Cir. 1975), to indicate that the 'practical and commonsense' standard, S.Rep. No. 1097, *supra,* at 101, required under the statute was satisfied. *See United States v. Brick,* 502 F.2d 219, 224 (8th Cir. 1974); *United States v. James,* 161 U.S. App.D.C. 88, 494 F.2d 1007, 1014–16 (1974); *United States v. Falcone,* 364 F.Supp. 877, 888–90 (D.N.J.1973), *aff'd on this issue on opinion below,* 505 F.2d 478, 480 (3d Cir. 1974), *cert. denied,* 420 U.S. 955, 95 S.Ct. 1339, 43 L.Ed.2d 432 (1975)." (p. 152).

*United States v. Robertson,* 504 F.2d 289 (5 Cir. 1974), *cert. denied,* 421 U.S. 913, 95 S.Ct. 1568, 43 L.Ed.2d 778, stated that the purpose of § 2518(1)(c) was not to " 'foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques. . . . ' The provisions contemplate that 'the showing be tested in a practical and commonsense fashion.' S.Rep. No. 1097, 90th Cong., 2d Sess. 100 U.S.Code Cong. & Admin.News 1968, pp. 2112, 2190." *Id.* at 293.

In *Robertson, supra,* the court also refused to scrutinize the affidavit piecemeal, require feasible but assertedly impractical physical surveillance, or question the essentiality of information sought by way of wiretaps: "To hold otherwise would constitute unwarranted court interference with legitimate investigative discretion contrary to the congressional intent." *Id.* at 293.

■ In our case, as indicated *supra,* the affidavits indicate a conscientious effort on the part of the F.B.I. to employ "other investigative procedures" where possible.

Only after these alternatives failed to produce sufficient evidence to take to trial and other methods were discarded as reasonably "unlikely to succeed if tried," was the warrant authorizing electronic surveillance sought. That is all the statute requires.

## II.

### *The Refusal of Informants to Testify May Be Properly Relied On.*

Defendants contend that the statement in the affidavits that the informants had stated they would refuse to testify even if granted immunity is legally insufficient.

■ The same problem was raised as to the *Kerrigan* affidavit, which was held sufficient. *United States v. Kerrigan, supra,* p. 38. In *United States v. Turner, supra* (528 F.2d p. 152) the affidavit recited "that informants were unwilling to testify against Ethridge for fear of retaliation." As shown in the quote above, the affidavit was held sufficient.

## III.

### *The Two-Pronged Test of Aguilar and Spinelli Has Been Satisfied.*

Defendants contend that the affidavits supporting the application for the wiretap do not meet the two-pronged test set forth in *Aguilar v. Texas,* 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723, 729 (1964), namely: (1) "the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were," and (2) "some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed . . . was 'credible' or his information 'reliable.' " *Accord Spinelli v. United States,* 393 U.S. 410, 413, 89 S.Ct. 584, 587, 21 L.Ed.2d 637, 641 (1969).

An inspection of the affidavits herein shows a detailed and concise statement of the investigation and complete background material.

The first affidavit (# 4002), executed on November 13, 1973, lists six sources or informants. In the case of each informer there was a satisfaction of the first prong, and the circumstances surrounding the informant's conclusion, in fact in most if not all instances, the informant is definitely naming and quoting his sources of information, including defendants Feldman and Hyman. In each case the second prong of the test is satisfied by the facts demonstrating the reliability of the informant—generally past activities in correctly supplying information and contributing to arrests or convictions—and corroboration by interviews by agent or by surveillance and observance by agents or by materials obtained by an authorized interception.

The second affidavit (# 4033) was executed on November 30, 1973. This affidavit contains the material obtained by the interception of phone calls pursuant to the order for interception based on the first affidavit. In addition it sets forth two sources or informants satisfying the two tests, in the same manner as the first affidavit.

■ The affidavits of the F.B.I. agents relate to surveillance relayed to them by other agents, as well as the information supplied by the sources or informants.

Clearly, the two-pronged test of *Aguilar* and *Spinelli* has been satisfied.

### IV.

*Only Probable Cause for the Wiretap Order, Not Probable Cause for a Search Warrant, is Required.*

Defendants begin their argument by noting that an application to intercept wire communications is not unlike an application to obtain a search warrant—an observation with which the government does not take issue. They go on to argue, however, that in view of this kinship, the statement contained within the affidavit submitted in support of the government's application to intercept wire communications in affidavit # 4002, that the investigation into the sus-

pected crime had not produced sufficient probable cause to obtain a search warrant, must also be construed as an admission that probable cause does not exist to intercept wire communications.

The defendants fail to distinguish, on the one hand, between probable cause to believe that a crime is being committed, and probable cause to believe that telephones are being used in furtherance of that crime, and, on the other hand, probable cause to believe that physical evidence of the crime exists at a specific location.

■ The statutory scheme in Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (18 U.S.C. §§ 2510–2520) established a procedure, not for securing a search warrant, but for electronic surveillance of telephone calls. There was required a showing, which was clearly a showing of probable cause, to believe that a crime was being committed and that certain telephones were being utilized in furtherance of the crime. The statutory scheme did not concern search warrants for physical evidence at the scene of the crime. The affidavits followed and complied with the statutes.

### V.

*Approval by Attorney General Under 18 U.S.C. § 2516 Presumes Proper Exercise of Judgment.*

Defendants do not challenge the authority of Assistant Attorney General Peterson to approve the application for wiretaps. They contend that the authorizations were defective because there is no showing that he arrived at his decisions only after careful evaluation and screening of the applications, in contravention of Supreme Court language that "The mature judgment of a particular, responsible Department of Justice official is interposed as a critical precondition to any judicial order." *United States v. Giordano,* 416 U.S. 505, 515–516, 94 S.Ct. 1820, 1827, 40 L.Ed.2d 341, 353 (1974).

■ The question raised has been settled in the Ninth Circuit in *United States v. Turner (supra)*: " . . . the basis on which, or method by which he [the proper authorizing official] gave the authorization is not, in our judgment, subject to review for compliance with § 2516(1). Rather it is to be presumed that the official has properly exercised the judgment called for by the statute when he affixed his signature to an order authorizing an application." (528 F.2d p. 151).

## VI. and VII.

*The Surveillance Was Properly Applied to Telephones and Did Not Violate 18 U.S.C. § 2517(4).*

■ 18 U.S.C. § 2517(4) provides: "No otherwise privileged wire or oral communication intercepted in accordance with, or in violation of, the provisions of this chapter shall lose its privileged character." Defendants cite the California Constitution and provisions of its Penal Code, § 631, which proscribe the interception of telephonic communications without the consent of *all* parties to the conversation. Although there is an exception for state law enforcement officers, federal officers are not mentioned. Defendants contend that telephonic communications are therefore "privileged" in California with respect to federal officers under § 2517(4).

The contentions are foreclosed by *United States v. Kerrigan, supra,* p. 37, n. 5, and *United States v. Turner, supra* (pp. 155–156).

## VIII.

*18 U.S.C. § 1955 is Constitutional.*

■ Defendants contend that 18 U.S.C. § 1955 is unconstitutionally broad with respect to Congress' finding that certain enumerated *types* of gambling operations have an effect on interstate commerce. This precise contention was rejected in *United States v. Sacco,* 491 F.2d 995 (9 Cir. 1974) (*en banc*). See *United States v. Kerrigan, supra,* p. 37, n. 1.

## IX.

*Article III of the Omnibus Crime Control and Safe Streets Act of 1968 (18 U.S.C. § 2510 to § 2520) is Constitutional.*

■ Defendants contend that the statutes lack particularity in describing "the person, place or thing sought to be seized" and in describing "the crime", "the type of conversation sought", and in failing "to place adequate and proper limitations on officers executing the eavesdrop", e. g., "preventing searches of unauthorized areas", "protect[ing] innocent members of society", and "preventing further search . . after the incriminating conversation is seized"; and that therefore Title III (and Sections 2510–2520) are unconstitutional in failing to meet the requirements of the Fourth Amendment and *Berger v. New York*, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967) for the issuance of search warrants.

However, Title III has been consistently held to be constitutional. *United States v. Turner, supra,* has held Title III constitutional on its face against such attacks as made by the defendants herein and lists decisions from nine circuits to like effect. (pp. 158–159).

In the foregoing portion of the opinion we have not cited *United States v. Kalustian* (9 Cir. 1975) 529 F.2d 585. We think *Kalustian* should be distinguished on the ground that the affidavits in *Kalustian* contained less particularity than the affidavits in the case at bar.

The judgments of conviction are AFFIRMED.