UNITED STATES of America

v.

George WILLIAMS, Jr., Appellant.

UNITED STATES of America

v.

Rosa L. SUMPTER, Appellant (two cases).

UNITED STATES of America

v.

Lussia REIN, Appellant.

UNITED STATES of America

v.

James A. LINCOLN, Appellant.

UNITED STATES of America

v.

Mary L. LINCOLN, Appellant.

UNITED STATES of America

v.

Michele E. LINCOLN, Appellant.

UNITED STATES of America

v.

Albert LINCOLN, Appellant.

UNITED STATES of America

v.

Norris DuBOSE, Appellant.

UNITED STATES of America

v.

**Thelma DuBOSE, Appellant.**

Nos. 76–1169, 76–1355, 76–1356, 76–1406,
and 76–1635 to 76–1637.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 23, 1977.

Decided April 12, 1978.

As Amended June 22, 1978.

Fred Warren Bennett, Washington, D. C., (appointed by this court) for appellant in No. 76–1169.

Roger E. Zuckerman, Washington, D. C., with whom James L. Lyons, Jack Sinclair, Fred W. Bennett and Edward O'Connell, Washington, D. C., were on the brief, for appellants in Nos. 76–1355, 76–1356, 76–1406, 76–1635, 76–1636, 76–1637, 76–1638, 76–1639 and 76–1640.

Larry C. Willey, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Robert Richard Chapman, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before McGOWAN, ROBINSON and WILKEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROBINSON.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Appellants were indicted on an assortment of charges stemming from their alleged participation in a gambling operation.[1] After they sought unsuccessfully to suppress conversations monitored by judicially authorized wiretaps,[2] they waived jury trials and were variously convicted on the basis of stipulated facts, thus preserving for appellate consideration their suppression claims. Finding no error in the District Court's ruling thereon, we affirm.

I

For about five years prior to 1974,[3] appellants' gambling business was the target of federal scrutiny through the use of informants and surveillance by agents of the Federal Bureau of Investigation.[4] Intelligence thus derived fostered the belief that a house on Seventh Street, Northwest, in the District of Columbia was the locus of a numbers operation,[5] and the FBI, by the District Court's authorization, installed pen registers on two telephones therein.[6] About two months later, on information

---

1. In thirteen counts appellants Rosa L. Sumpter, Lussia Rein and George Williams, Jr., together with five other persons, were charged under 18 U.S.C. § 1955 (1970) with conducting an illegal gambling business, under D.C.Code § 22–1501 (1973) with operating a lottery, under D.C.Code § 22–1502 (1973) with possession of numbers slips, and under D.C.Code § 22–1505 (1973) with maintaining gambling premises. Appellant Sumpter was also charged under 18 U.S.C. § 1952 (1970) with use of a telephone in interstate commerce in aid of unlawful activity. A separate three-count indictment similarly charged appellants James A. Lincoln, Mary L. Lincoln, Michele E. Lincoln, Albert Lincoln, Norris DuBose and Thelma DuBose with violations of §§ 1955 and 22–1501 and James and Albert Lincoln with a violation of § 1952.

2. See Omnibus Crime Control and Safe Streets Act of 1969, Pub.L.No.90–351, tit. III, § 802, 82 Stat. 216, 18 U.S.C. § 2515 (1970). Hereinafter, citations will be to the Act as codified.

3. Appellants' Appendix (App.) 128.

4. App. 82–112.

5. App. 82–93.

6. App. 113. "A pen register is a mechanical device that records the numbers dialed on a telephone by monitoring the electrical impulses caused when the dial on the telephone is released. It does not overhear oral communications and does not indicate whether calls are actually completed." *United States v. New York Tel. Co.*, 434 U.S. 159, 161 n.1, 98 S.Ct. 364, 366 n.1, 54 L.Ed.2d 376, 382 n.1 (1977). The standards governing orders authorizing the installation of pen registers are to be found in the Fourth Amendment and Fed.R.Crim.P. 41. *Id.* at 168–170, 98 S.Ct. at 370–371, 54 L.Ed.2d at 387–388.

Appellants claim that the District Court erred in finding probable cause for resort to the pen registers. We think the affidavit supporting the application therefor contains adequate validating data. The affidavit, after summarizing material connoting the reliability of numerous confidential informants, App. 12–15, sets forth information from those sources comfortably establishing probable cause to believe that appellant Sumpter was engaging in telephone conversations thereat which furthered a numbers business. App. 16–21. The affidavit also describes surveillance of the Seventh Street house, which disclosed that Sumpter was fre-

gleaned to that point, authority to intercept communications over one of these lines was conferred.[7] After cessation of that wiretap,[8] approval for electronic surveillance of two telephones at a house on Landover Road, in Maryland, was obtained.[9] Search warrants were subsequently executed at District and Maryland locations where the FBI believed the operation was progressing.[10]

Indictments followed,[11] and appellants soon filed pretrial suppression motions. After two days of hearings, the District Court deferred consideration of one motion and denied the remainder,[12] and after a further hearing rejected the deferred motion.[13] In this court, appellants contend that access to the conversations overheard in 1974 on the Seventh Street and Landover telephone lines was tainted by nine concededly illegal wiretappings conducted between 1970 and 1973. They also argue that the applications for the Seventh Street and Landover interceptions were defective under Title III of the Omnibus Crime Control and Safe Streets Act of 1969.[14] Thus they challenge on both grounds the court's refusal to ban the use of evidence derived by electronic surveillance at the Seventh Street and Landover locations. We now examine, in turn, these assertions of error.[15]

## II

The illegality of the nine 1970–73 wiretaps is not in dispute, for each has already been the subject of a judicial declaration to that effect.[16] The disagreement is over whether the Seventh Street and Landover wiretaps were similarly unlawful by reason of linkage to those transpiring before.[17] We need not reach this dispute, however, because we ultimately hold that the District Court properly concluded that appellants failed to establish their standing to benefit from any error inhering in the earlier monitoring.

quently there at times when numbers activity was reasonably thought to be occurring. App. 24–33.

Pursuant to a subpoena duces tecum, Chesapeake & Potomac Telephone Company supplied the numbers of the two telephones at the Seventh Street address. App. 22. Appellants argue that the affidavit and application do not say that they were the only telephones there. The District Court found that

[w]hen read in a commonsense fashion, the affidavit shows that in response to a subpoena duces tecum, Chesapeake & Potomac Telephone Company provided the numbers of all phones which its records showed at [Seventh Street]. The court, therefore, finds that the affidavit demonstrated probable cause for the authorization of pen registers on the numbers shown in the affidavit.

App. 414. We find no error in this respect.

7. App. 50–132; see 18 U.S.C. § 2518(3) (1970).

8. App. 133–136.

9. App. 145–275.

10. App. 422–425.

11. See note 1 supra.

12. App. 409–427. No appeal was taken from the District Court's decisions on several of the pretrial motions.

13. App. 428–430.

14. 18 U.S.C. §§ 2510 et seq. (1970 and Supp. V 1975).

15. Appellant George Williams, Jr., urges additionally that the District Court stumbled in ruling that the failure to serve him with an inventory notice, as directed by 18 U.S.C. § 2518(8)(d) (1970), did not warrant suppression of the wiretap evidence. After the court had ruled, however, the Supreme Court handed down its decision in United States v. Donovan, 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977), in which it held that nonobservance of this statutory specification, at least when not in bad faith, does not require suppression of intercepted communications. Id. at 435–437 & n.23, 97 S.Ct. at 672–673 & n.23, 50 L.Ed.2d at 672–674 & n.23. Since Williams has nowhere contended that bad faith was an element of the Government's omission to provide the authorizing judge with his name so that an inventory notice could be sent to him, Donovan dictates that the suppression remedy may not be invoked.

16. The relevant events are recounted in Brief for Appellants at 9–14. The Government has not disputed the accuracy of that description of the nine wiretaps.

17. Specifically, appellants contend that material derived from some of the 1970–73 wiretaps may have been used to develop four of the confidential sources of information instrumental in obtaining judicial leave to install the Seventh Street and Landover wiretaps.

Before an accused may be heard to complain that prosecution evidence should be suppressed because it was come by illegitimately, he must first make out his standing, which generally entails a demonstration that his own interests were affected by the challenged search or seizure.[18] With particular regard to electronic eavesdropping, the accused must show that it was directed at *him*, that the Government intercepted *his* conversations or that the wiretapped communications occurred at least partly on *his* premises.[19] Unless he can establish one of these events, it is legally irrelevant that the surveillance was unlawful. And this rule remains true even if acquisition of the questioned evidence was not the direct result of unlawful conduct but instead was the fruit of the proverbial poisonous tree.[20] Thus, it was incumbent upon each appellant seeking to contend that the earlier unlawful wiretaps tainted the later ones at Seventh Street and Landover and the evidence therefrom to show that the prior misconduct made possible an interception of his conversations or a breach of the privacy of his premises.[21]

It is clear, however, that to facilitate an accused's effort to demonstrate that evidence employable against him is contaminated by illegal surveillance previously conducted, the Government, upon request, must "affirm or deny the occurrence of the alleged unlawful act." [22] And where, as here, it is unquestioned that there has been electronic eavesdropping and that it was unlawful, the pertinent response is one indicating whether the accused himself was vic-

18. *Alderman v. United States*, 394 U.S. 165, 171–174, 89 S.Ct. 961, 965–967, 22 L.Ed.2d 176, 185–187 (1969).

19. See *id.* at 176, 89 S.Ct. at 968, 22 L.Ed.2d at 188 (accused has standing to challenge electronic surveillance "if the United States unlawfully overheard conversations of [accused] himself or conversations occurring on his premises"); *United States v. (Frank) Scott*, 164 U.S. App.D.C. 125, 128, 504 F.2d 194, 197 (1974), *appeal following remand*, 170 U.S.App.D.C. 158, 516 F.2d 751 (1975), *cert. denied*, 425 U.S. 917, 96 S.Ct. 1519, 47 L.Ed.2d 768 (1976); *United States v. Bellosi*, 163 U.S.App.D.C. 273, 282, 501 F.2d 833, 841–842 (1974); *Light v. United States*, 529 F.2d 94, 96 (9th Cir. 1976); 18 U.S.C. § 2518(10)(a) (1970) ("aggrieved person . . . may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom"); *id.* § 2510(11) ("'aggrieved person' means a person who was a party to any intercepted wire or oral communication or a person against whom the interception was directed"). See generally Decker & Handler, *Electronic Surveillance: Standards, Restrictions and Remedies*, 12 Cal. West.L.Rev. 60, 97 (1975) (Congress intended to adopt Fourth Amendment standing requirements).

20. *Alderman v. United States*, *supra* note 18, 394 U.S. at 172–173, 89 S.Ct. at 965–966, 22 L.Ed.2d at 186, quoting *Wong Sun v. United States*, 371 U.S. 471, 492, 83 S.Ct. 407, 419, 9 L.Ed.2d 441, 458 (1963) and *Jones v. United States*, 362 U.S. 257, 261, 80 S.Ct. 725, 731, 4 L.Ed.2d 697, 702–703 (1960); *United States v. Magaddino*, 496 F.2d 455, 460 (2d Cir. 1974).

21. *United States v. Plotkin*, 550 F.2d 693, 695 (1st Cir.), *cert. denied*, 434 U.S. 820, 98 S.Ct. 61, 54 L.Ed.2d 76 (1977); *United States v. Scasino*, 513 F.2d 47, 50–51 (5th Cir. 1975); *United States v. Abramson*, 553 F.2d 1164, 1170 (8th Cir.), *cert. denied*, 433 U.S. 911, 97 S.Ct. 2979, 53 L.Ed.2d 1095 (1977); *Nolan v. United States*, 423 F.2d 1031, 1042 (10th Cir.), *cert. denied*, 400 U.S. 848, 91 S.Ct. 47, 27 L.Ed.2d 802 (1970). See also *United States v. Gibson*, 500 F.2d 854, 855 (4th Cir. 1974), *cert. denied*, 419 U.S. 1106, 95 S.Ct. 777, 42 L.Ed.2d 802 (1975).

As we have stated, each appellant has standing to object to any defect in the Seventh Street and Landover wiretaps on which he or she was concededly overheard. Appellants contend more extensively that any use of information from the unlawful 1970–73 wiretaps in obtaining the Seventh Street and Landover authorizations produced a flaw in the ensuing wiretaps, and that they therefore may complain of infirmities of that sort even if their own voices were not overheard or their own premises were not involved during the earlier illegal eavesdropping. That argument has been rejected by numerous courts. We agree that an accused is unable to attack in this indirect fashion those wiretaps that he could not challenge directly. See, *e. g.*, *United States v. Fury*, 554 F.2d 522, 525–526 (2d Cir.), *cert. denied*, 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977); *United States v. Wright*, 524 F.2d 1100, 1102 (2d Cir. 1975); *United States v. Scasino*, *supra*, 513 F.2d at 51.

22. Act of Oct. 15, 1970, Pub.L.No.91–452, tit. VII, § 702(a), 84 Stat. 935, 18 U.S.C. § 3504(a)(1) (1970); see *In re Evans*, 146 U.S. App. D.C. 310, 313, 318, 452 F.2d 1239, 1242, 1247 (1971), *cert. denied*, 408 U.S. 930, 92 S.Ct. 2479, 33 L.Ed.2d 342 (1972).

timized thereby. If the Government answers in the affirmative, the accused is entitled to examine the records incorporating the contents of any monitored conversation that he has standing to attack.[23]

Appellants sought records of eight of the 1970–73 wiretaps,[24] asserting that one or more appellants had been overheard on them. The District Court directed each appellant whose conversations allegedly had been intercepted to file an affidavit delineating the circumstances supporting the claim,[25] and only two undertook to do so.[26] Appellant James Lincoln averred:

> I have search my recollection to the best of my ability and can state the following. Certain persons said to be targets of wire interceptions listed as numbers 4 and 8 above were known to me during the period in which the illegal taps were operative. I spoke with them during this period and spoke with them by telephone. Because of the lapse of time, I cannot now recollect the telephone numbers that

were involved, and accordingly I am unable in good conscience to aver with certainty that I spoke to the individuals in question over the illegally tapped telephone numbers. On the basis of my memory, however, I have set forth above, I believe that possibility is a substantial one.[27]

Appellant Rosa L. Sumpter filed an almost identical affidavit, differing essentially only in its allegation that she might have spoken over wiretapped lines 1, 2, 3, 5, 6 and 7—those which Lincoln had not mentioned.[28] The Government, in turn, submitted letters from a responsible official of the Department of Justice stating that neither Lincoln nor Sumpter had been "monitored by any electronic device of the Federal Bureau of Investigation,"[29] or of either of six other federal agencies.[30]

In light of the Government's positive denial, appellants failed to carry their threshold burden of demonstrating that any of their conversations were intercepted,[31] and

---

**23.** *Alderman v. United States,* supra note 18, 394 U.S. at 184, 89 S.Ct. at 972, 22 L.Ed.2d at 193; *Taglianetti v. United States,* 394 U.S. 316, 317, 89 S.Ct. 1099, 1100–1101, 22 L.Ed.2d 302, 304–305 (1969). Even if no appellant was the target of the surveillance as a whole, appellants maintain that once one of them has established his standing to claim taint from any conversation on his premises or to which he was a party, he is entitled to the tapes or transcripts of *all* conversations intercepted on that wiretap. Appellants thus contend that they can resist the use of any evidence obtained regardless, for instance, whether it was derived from a conversation of an appellant or from that of an unrelated speaker. *Alderman* and *Taglianetti,* however, clearly indicate that an accused is entitled only to the transcripts involving conversations which he has standing to attack and that he has standing to challenge only evidence obtained through his own conversations or those intercepted on his premises.

**24.** Although appellants insist that the Landover and Seventh Street wiretaps were tainted by intelligence gained through the nine 1970–73 wiretaps, they sought tapes and transcripts only from eight, omitting a wiretap on the telephone of one of appellants, Albert Lincoln, presumably because information concerning it had already been made available to at least one appellant at the time that wiretap was declared unlawful.

**25.** App. 428–429.

**26.** The other appellants sought to rely solely upon the general nature of the 1970–73 wiretaps: "Each involved the FBI or local gambling investigators and each occurred in Washington, D.C. or its close environs." Brief for Appellants at 38.

**27.** App. 285. He also stated, "I am aware that by firmly claiming to have spoken over the illegally tapped telephones, I can obtain access to their contents, which may materially benefit our contention that the current taps are unlawful. I understand the importance of such a claim, but in honesty can make it only as qualified above." App. 285–286.

**28.** App. 287–290.

**29.** App. 294–295; Transcript of June 19, 1975 Hearing (Tr.) 116; Brief for Appellee at 59.

**30.** App. 295; Tr. 116; Brief for Appellee at 59.

**31.** See *In re Evans,* supra note 22, 452 F.2d at 1247; *United States v. Covello,* 410 F.2d 536, 550 (2d Cir.), cert. denied, 396 U.S. 879, 90 S.Ct. 150, 24 L.Ed.2d 136 (1969); *United States v. D'Andrea,* 495 F.2d 1170, 1173 (3d Cir.), cert. denied, 419 U.S. 855, 95 S.Ct. 101, 42 L.Ed.2d 88 (1974); *United States v. Van Drunen,* 501 F.2d 1393, 1395 (7th Cir.), cert. denied, 419 U.S. 1091, 95 S.Ct. 684, 42 L.Ed.2d 88 (1974).

they urge neither of the other two traditional grounds of entitlement to records of wiretapped communications for use at a taint hearing.[32] Rather, they insist that the tapes and transcripts of the 1970–73 electronic surveillance must be provided to enable them to traverse the Government's denial. We disagree.

When the Government responds in the affirmative, the accused, as we have seen, may demand records only of monitoring of his own conversations, implicating his own premises or aimed at him.[33] Because the Government states flatly that none of the eight wiretaps in question here involved monitoring of conversations of those types, appellants necessarily are seeking an audit of all of the intercepted conversations, which according to their own count number in the thousands and cover a period of several years.[34] By that technique, individuals whose rights, according to the Government, have not been infringed would gain far greater access to evidence in the Government's possession than would an accused whose rights concededly were violated. Indeed, the curious logic of appellants'

stance would require the Government, after the most unequivocal denial of an interception, routinely to bare the content of any wiretapped conversation to any accused who can claim that he just might have been overheard.

Appellants have pointed to no case wherein, despite a Government denial that electronic eavesdropping has affected an accused's protected interests, a court has ordered that records thereof be turned over to the accused to facilitate his proof of standing. On the contrary, it is well settled that an accused has "no right to rummage in government files,"[35] and that to "elicit [ ] what is in the Government's possession before its submission to the jury" he "must satisfy the trial court with [the] solidity" of his claim.[36] Put another way, "tenuous claims [are not] sufficient to justify the trial court's indulgence of inquiry into the legitimacy of evidence in the Government's possession."[37] We have, then, hewed to the view that the Government's denial must generally be accepted as conclusive,[38] and we do so again today.

---

32. See text *supra* at note 19.

33. See text at notes 19–20 *supra*. *United States v. Magaddino, supra* note 20, cited by appellants, is inapposite. There the Second Circuit divided wiretap challengers into three groups for purposes of determining their standing. The first group included those whose conversations the Government conceded it had overheard. 496 F.2d at 460. The second group consisted of those whose voices had been illegally intercepted by state officials. *Id.* The court held that both of these groups had standing. Those in the third group, however, had not shown that telephone conversations of their own had been intercepted, and the court held that they had failed to establish standing. At no time did it indicate that they were entitled to records of any conversations to aid their proof thereof.

34. Brief for Appellants at 45.

35. *Taglianetti v. United States, supra* note 23, 394 U.S. at 317, 89 S.Ct. at 1100–1101, 22 L.Ed.2d at 304–305.

36. *Nardone v. United States*, 308 U.S. 338, 342, 60 S.Ct. 266, 268, 84 L.Ed. 307, 312 (1939).

37. *Id.*

38. *In re Evans, supra* note 22, 146 U.S.App. D.C. at 318, 452 F.2d at 1247. Appellants argue that an electronic-surveillance denial by the Government not in affidavit form is insufficient to satisfy 18 U.S.C. § 3504 (1970). That provision, however, does not itself require an affidavit, although one is normally desirable. See Note, *Claiming Illegal Electronic Surveillance: An Examination of 18 U.S.C. § 3504(a)(1)*, 11 Harv. C.R.C.L.L.Rev. 632, 660 (1976). Only the Seventh Circuit has refused to accept letter-denials from the Assistant Attorney General in charge of the Justice Department's Criminal Division. See *United States v. Van Drunen, supra* note 31, 501 F.2d at 1399; *Korman v. United States*, 486 F.2d 926, 931 (7th Cir. 1973). We are not constrained, absent further enlightenment from Congress, to depart from the position taken by other circuits that have accepted letter-denials. See, *e.g., United States v. Aloi*, 511 F.2d 585, 602 (2d Cir.), *cert. denied*, 423 U.S. 1015, 96 S.Ct. 447, 46 L.Ed.2d 386 (1975); *United States v. D'Andrea, supra* note 31, 495 F.2d at 1174 n.12; *United States v. Stevens*, 510 F.2d 1101, 1104–1106 (5th Cir. 1975).

During the hearing, appellant Sumpter testified to several occurrences that in her mind pointed to an illegal wiretap on her telephone by an FBI agent at some earlier time. Tr.

*Alderman v. United States,*[39] does not, as appellants suggest, support their claim of access to the 1970–73 records. There the Supreme Court taught no more than that an accused is entitled to transcripts of his own conversations or those occurring on his own premises to assist the proof of his taint allegations.[40] Standing had been admitted in that case. *Alderman* in no way intimates that when the Government has unqualifiedly denied monitoring an accused it must then open up wiretapped conversations of various species to aid an individual in substantiating his standing. *Alderman* provided an adversary examination of unlawfully gathered tapes because determining "those items that might have made a substantial contribution to the [prosecution's] case" is a complex matter requiring judgment and knowledge that only the accused would have.[41] The factual determination summoned here, however, was neither subtle nor complicated, and thus ordinarily could be entrusted to the Government. Furthermore, the Court in *Alderman* recognized that required disclosure of tapped conversations might lead the Government to forgo prosecution in cases implicating third-party

or national security interests,[42] and took pains to note that this prospect would be minimized because "disclosure [would] be limited to the transcripts of a defendant's own conversations and of those which took place on his [own] premises," and accordingly that "[i]t [could] safely be assumed that much of this he will already know." [43] In the instant case, however, disclosure could not be so limited and the problems avoided in *Alderman* would reappear full force.[44]

■ We leave open now, as we have done before, the question whether "under some circumstances [an individual] should be permitted to traverse the government's [denial], or whether [an individual] should be able to shift the burden of going forward back to the government by making some showing to contradict the government's assertions . . . ." [45] Appellants have made no such showing here. Only two of them even proffered particular allegations, and those—devoid of either dates, times or subject matter of the relevant conversations—fell far short of germinating a substantial suspicion that the Government's denial was untrustworthy.[46] We realize that few accused of crime will be

114–125. The agent, however, testified to the contrary. Tr. 125–133. Since the agent's disavowal was under oath and he was available for cross-examination, we are not persuaded by appellant's complaint that the agent's denial was insufficient. *In re Maury Santiago,* 533 F.2d 727, 729–730 (1st Cir. 1976) (sworn testimony); *In re Berry,* 521 F.2d 179, 185 (10th Cir.), *cert. denied,* 423 U.S. 928, 96 S.Ct. 276, 46 L.Ed.2d 256 (1975) (unsworn oral denial). Nor can we characterize the court's finding that "Sumpter's testimony at the hearing was insufficient to show that the government had engaged in such interception" as clearly erroneous. App. 413 n.3.

39. *Supra* note 18.

40. 394 U.S. at 184, 89 S.Ct. 972, 22 L.Ed.2d at 193.

41. *Id.* at 182, 89 S.Ct. at 971, 22 L.Ed.2d at 192:
An apparently innocent phrase, a chance remark, a reference to what appears to be a neutral person or event, the identity of a caller or the individual on the other end of a telephone, or even the manner of speaking or

using words may have special significance to one who knows the more intimate facts of an accused's life. And yet that information may be wholly colorless and devoid of meaning to one less acquainted with all relevant circumstances.

42. *Id.* at 184, 89 S.Ct. at 972, 22 L.Ed.2d at 193.

43. *Id.* at 184–185, 89 S.Ct. at 972–973, 22 L.Ed.2d at 193.

44. See text at note 33 *supra.*

45. *In re Evans, supra* note 22, 146 U.S.App. D.C. at 318, 452 F.2d at 1247. We similarly leave open the question of *in camera* inspection where a substantial showing undercutting the Government's denial has been made.

46. See text at notes 27–28 *supra.* See also note 26 *supra.* At the close of oral argument before this court, counsel for appellants suggested for the first time that appellants needed access to the contents of the intercepted conversations to find out whether unidentified voices thereon

honestly able to be more specific as to discussions allegedly held several years earlier. But the alternative of compelling the Government to disclose the contents of any wiretapped conversation in which an accused asserts that he just might have been overheard would place a burden on law enforcement that is both unprecedented and dangerous.[47] Since appellants are not entitled to the assistance they seek in establishing their standing, and since they have not otherwise demonstrated their standing to challenge any conjectured taint emanating from the 1970–73 intercepts, the District Court's determination in that regard must be sustained.[48]

### III

Appellants further maintain that the applications for the Seventh Street and Landover wire interceptions failed to set forth adequately information called for by 18 U.S.C. § 2518(1)(c), which specifies that each such request include

a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.[49]

That section also imposes a corresponding duty on the authorizing judge to find, as a condition to granting an application, that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or too dangerous" before permitting any electronic surveillance.[50]

▮▮▮▮ The purpose of these critical requirements is to insure that "wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime," [51] and that it is utilized only "where the circumstances warrant the surreptitious interception of wire and oral communications." [52] Because necessity is a keystone of congressional regu-

---

included those of appellants. Compare (*Robert*) *Baker v. United States*, 131 U.S.App.D.C. 7, 33, 401 F.2d 958, 984 (1968), *on remand*, 301 F.Supp. 973 (D.D.C.1969), *aff'd*, 139 U.S.App. D.C. 126, 430 F.2d 499, *cert. denied*, 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970) with *United States v. Covello, supra* note 31, 410 F.2d at 550 and *United States v. Kane*, 450 F.2d 77, 81 (5th Cir. 1971), *cert. denied*, 405 U.S. 920, 92 S.Ct. 367, 27 L.Ed.2d 384 (1972) and *Nolan v. United States, supra* note 21, 423 F.2d at 1042. This possibility was not urged in the District Court, and the record is devoid of any indication of the existence of unidentified voices on those wiretaps. Since the issue was not raised in the District Court nor briefed or argued to this court, we do not consider it.

**47.** See text at notes 39–44 *supra*.

**48.** Even assuming arguendo that all appellants have standing to challenge the wiretap of appellant Albert Lincoln's telephone—the transcripts of which were already in their possession, see note 24 *supra*—they have not pointed to any taint from that wiretap. Unlike the records of the eight wiretaps to which the District Court denied them access, appellants could have used the Albert Lincoln transcripts to trace any possible taint to the Seventh Street and Landover wiretaps. Instead, aside from the general assertion that some information

sources may have been developed through the use of the prior illegal wiretaps, appellants have based no argument specifically on the transcripts in their possession. No one would deny that "the trial judge must give opportunity, however closely confined, to the accused to prove that a substantial portion of the case against him was a fruit of the poisonous tree." *Nardone v. United States, supra* note 36, 308 U.S. at 341, 60 S.Ct. at 268, 84 L.Ed. at 312. But where, as here, parties come forward with no showing whatsoever that the Government has used intelligence derived from the earlier illegal wiretap, and where the FBI agent in charge of the investigation declares under oath that, to his knowledge, the FBI never had any contact with that wiretap, App. 379–381, all the opportunity that *Nardone* and *Alderman* provide has been afforded. See also *United States v. Sapere*, 531 F.2d 63, 66–67 (2d Cir. 1976).

**49.** 18 U.S.C. § 2518(1)(c) (1970).

**50.** 18 U.S.C. § 2518(3)(c) (1970).

**51.** *United States v. Kahn,* 415 U.S. 143, 153 n.12, 94 S.Ct. 977, 983 n.12, 39 L.Ed.2d 225, 236 n.12 (1974).

**52.** *United States v. Giordano*, 416 U.S. 505, 515, 94 S.Ct. 1820, 1826–1827, 40 L.Ed.2d 341, 373 (1974).

lation of electronic eavesdropping,[53] courts have given close scrutiny to applications challenged for noncompliance [54] and have rejected generalized and conclusory statements that other investigative procedures would prove unsuccessful.[55] Nonetheless, the statutory command was not designed to "foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted." [56] Rather, "[i]t is sufficient that the government show that other techniques are impractical under the circumstances and that it would be unreasonable to require pursuit of those avenues of investigation"; [57] and, consistently with the congressional intent, that "showing [must] be tested in a practical and commonsense fashion." [58] Consequently, in practice "[c]ourts have interpreted this requirement flexibly, recogniz-

ing that wiretaps are neither a routine initial step nor an absolute last resort." [59]

■ Measured in this manner, the applications for the electronic interceptions at Seventh Street and Landover clearly comply with the statute. The Seventh Street application and its accompanying affidavit describe the five-year investigation preceding the request.[60] The affidavit explains that while the FBI had received information from twelve reliable confidential sources—many of whom had obtained their information from appellants [61]—none of the informants was willing to testify because of fear for his safety.[62] The affidavit further states that the FBI had attempted to build its case by conducting over thirty visual surveillances of some appellants, and by installing a pen register on a telephone used

**53.** Note, *Electronic Surveillance, Title III, and the Requirement of Necessity*, 2 Hast.Const. L.Q. 571, 617 (1975).

**54.** *United States v. (Leon) James*, 161 U.S.App. D.C. 88, 95–97, 494 F.2d 1007, 1014–1016, *cert. denied*, 419 U.S. 1020, 95 S.Ct. 495, 42 L.Ed.2d 294 (1974); *United States v. Scibelli*, 549 F.2d 222, 227 (1st Cir. 1976), *cert. denied*, 431 U.S. 960, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977); *United States v. DiMuro*, 540 F.2d 503, 510–511 (1st Cir. 1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977); *United States v. Vento*, 533 F.2d 838, 849–850 (3d Cir. 1976); *United States v. Pacheco*, 489 F.2d 554, 565 (5th Cir. 1974), *cert. denied*, 421 U.S. 909, 95 S.Ct. 1558, 43 L.Ed.2d 774 (1975); *United States v. Kalustian*, 529 F.2d 585, 589–590 (9th Cir. 1975). Compare *United States v. Anderson*, 542 F.2d 428, 431 (7th Cir. 1976).

**55.** *United States v. Scibelli, supra* note 54, 549 F.2d at 227–228; *United States v. DiMuro, supra* note 54, 540 F.2d at 510–511; *United States v. Vento, supra* note 54, 533 F.2d at 849–850; *United States v. Feldman*, 535 F.2d 1175, 1178–1179 (9th Cir.), *cert. denied*, 429 U.S. 940, 97 S.Ct. 354, 50 L.Ed.2d 309 (1976); *United States v. Kalustian, supra* note 54, 529 F.2d at 589–590.

**56.** *United States v. Robertson*, 504 F.2d 289, 293 (5th Cir. 1974), *cert. denied*, 421 U.S. 913, 95 S.Ct. 1568, 43 L.Ed.2d 778 (1975); accord, *United States v. Vento, supra* note 54, 533 F.2d at 849; *United States v. Pacheco, supra* note

54, 489 F.2d at 565; *United States v. Kerrigan*, 514 F.2d 35, 38 (9th Cir.), *cert. denied*, 423 U.S. 924, 96 S.Ct. 266, 46 L.Ed.2d 249 (1975).

**57.** *United States v. Vento, supra* note 54, 533 F.2d at 849; accord, *United States v. James, supra* note 54, 161 U.S.App.D.C. at 98–99, 494 F.2d at 1015–1016; *United States v. Pacheco, supra* note 54, 489 F.2d at 565.

**58.** S.Rep.No.1097, 90th Cong., 2d Sess. 101 (1968); accord, *United States v. James, supra* note 54, 161 U.S.App.D.C. at 98–99, 494 F.2d at 1015–1016; *United States v. de la Fuente*, 548 F.2d 528, 537–538 (5th Cir.), *cert. denied*, 431 U.S. 932, 97 S.Ct. 2640, 53 L.Ed.2d 249 (1977).

**59.** Note, *The United States Courts of Appeals: 1975–1976 Term Criminal Law and Procedure*, 65 Geo.L.J. 203, 247 (1976).

**60.** App. 50–132.

**61.** See text at note 4 *supra*.

**62.** App. 130; see *United States v. Agrusa*, 541 F.2d 690, 694 (8th Cir. 1976), *cert. denied*, 429 U.S. 1045, 97 S.Ct. 751, 50 L.Ed.2d 759 (1977). Neither the authorizing court nor the trial court was presented with any reason to disbelieve this representation. It has been suggested that "[f]ederal agents . . . routinely tell the courts that their confidential informants refuse to testify for fear of their lives, but in many cases where the informant is disclosed, he admits he had no such fear." Schwartz, *Taps,*

by one appellant.[63] Although these techniques had uncovered a suspicious pattern of behavior suggesting that the Seventh Street house was a focal point of numbers activity, they did not produce evidence that could be used to prosecute many of the principals involved.[64] And the affidavit, in its summary, averred that

[d]ue to the considerable length of time covered by this investigation using all possible normal investigative techniques, and through the experience of affiant and other Special Agents of the Federal Bureau of Investigation familiar with the investigation of numbers gambling operations, it is reasonably concluded [that] the continued use of normal investigative techniques would not bring this matter to a successful conclusion.[65]

The Landover application, which was made after completion of the Seventh Street interceptions, incorporates the earlier affidavit and similarly details reasons for the Government's belief that the target telephones were being used in a gambling operation.[66] The Landover affidavit also includes transcripts of calls intercepted on the Seventh Street line from the target telephones,[67] and a concluding section similar to that in the Seventh Street affidavit.[68]

Appellants argue that the summary and prayer portions of the affidavits contain mere boilerplate assertions, in derogation of the statutory command. To be sure, these sections of the affidavits are framed in conclusory terminology, but they cannot rationally be separated from the preceding detailed descriptions of the investigative events. Applications are not to be read in a piecemeal fashion,[69] and viewed as a whole the requests here delineated the reasons—which we deem ample—why other investigative techniques either had failed or would not be feasible. The Government had conducted a multi-faceted five-year investigation and still was unable to secure the evidence necessary to prosecute many of the principals of the gambling operation.[70] This, then, is not a situation in which the Government sought to employ wiretapping as a routine investigative tool;[71] neither is it a case in which the Government relied simply on "the insufficiency of alternative procedures in gambling prosecutions *in general* . . . ."[72] Instead, after scrutinizing the numbers activity over a long period of time by conventional techniques, the Government not unreasonably believed it needed to utilize electronic surveillance to

---

*Bugs, and Fooling the People*, reprinted in Y. Kamisar, W. LaFave, & J. Israel, Modern Criminal Procedure 103 (1978 Supp.).

Should we encounter in future cases this or any other abuse of the confidence entrusted to officials making applications under Title III, we will not hesitate to attempt to craft a remedy.

63. See note 5 *supra* and accompanying text.

64. App. 130.

65. App. 130–131.

66. App. 145–270.

67. App. 210–235.

68. App. 237–239.

69. *United States v. Feldman, supra* note 55, 535 F.2d at 1179; *United States v. Robertson, supra* note 56, 504 F.2d at 293.

70. See *United States v. Abramson, supra* note 21, 553 F.2d at 1171 (after seven months other techniques had failed to produce evidence sufficient for prosecution); *United States v. Spagnulo*, 549 F.2d 705, 710–711 (9th Cir. 1977) (affidavit properly included facts from which "a district judge [could] independently determine that ordinary investigative techniques employing a normal amount of resources have failed to make the case within a reasonable period of time"); Note, *supra* note 53, 2 Hast. Const.L.Q. at 606–616 (discussing normal investigative techniques that must have failed or been too dangerous or ineffective).

71. See *United States v. Kalustian, supra* note 54, 529 F.2d at 1179.

72. *United States v. Feldman, supra* note 55, 535 F.2d at 1178 (emphasis in original). Compare *United States v. McCoy*, 539 F.2d 1050, 1055–1056 (5th Cir. 1976), *cert. denied*, 431 U.S. 919, 97 S.Ct. 2185, 53 L.Ed.2d 230 (1977).

gain enough intelligence about the "nature and the scope" of the operation.[73] In short, "exposure of [the] entire operation required different and more sophisticated techniques."[74] The applications adequately set forth the basis for concluding that normal investigative procedures had been exhausted or would be unlikely to produce essential evidence, and the District Court correctly held that the statutory requirement had been satisfied.

## IV

Having found that appellants failed to establish their standing to challenge any taint in the Seventh Street and Landover intercepts stemming from the prior unlawful wiretaps, and that the Seventh Street and Landover applications complied with governing law, appellants' convictions are hereby

*Affirmed.*

---

**73.** The applications for the wire interceptions stated that violations of 18 U.S.C. § 1955 (1970) were among the crimes to be investigated. That offense requires proof that a gambling business "involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business," and that it "has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day." 18 U.S.C. § 1955(b)(1)(ii) & (iii) (1970). When the Government is duly authorized to resort to electronic surveillance in a criminal investigation, it may do so—to the limit of its authority—to ascertain the full extent of the crime. *United States v. Vento,*

*supra* note 54, 533 F.2d at 850; *United States v. Robertson, supra* note 56, 504 F.2d at 293; *United States v. Pacheco, supra* note 54, 489 F.2d at 565; *United States v. Armocida,* 515 F.2d 29, 38 (3d Cir.), *cert. denied,* 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84 (1975). These considerations combine to make apparent why, despite the five-year investigation, wiretapping was necessary to any effort to ascertain whether appellants were in violation of § 1955.

**74.** *United States v. James, supra* note 54, 161 U.S.App.D.C. at 97, 494 F.2d at 1016; see *United States v. Sandoval,* 550 F.2d 427, 430–431 (9th Cir. 1976).