# Authority of Acting FBI Officials to
# Sign National Security Letters

Under the statutes authorizing the FBI to issue national security letters, the Director of the FBI may designate Acting Deputy Assistant Directors and Acting Special Agents in Charge to sign national security letters.

January 16, 2009

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
FEDERAL BUREAU OF INVESTIGATION

You have asked whether an official acting temporarily in the position of Deputy Assistant Director at the headquarters of the Federal Bureau of Investigation ("FBI") or Special Agent in Charge of an FBI field office may sign national security letters ("NSLs"). By statute, NSLs may be issued by "[t]he Director of the Federal Bureau of Investigation, or his designee in a position not lower than Deputy Assistant Director at Bureau headquarters or a Special Agent in Charge in a Bureau field office designated by the Director." *E.g.*, 18 U.S.C. § 2709(b) (2006).[1] We conclude that, under the NSL statutes, the Director of the FBI ("Director") may designate Acting Deputy Assistant Directors and Acting Special Agents in Charge to sign NSLs.[2]

---

[1] Memorandum for the Principal Deputy Assistant Attorney General, Office of Legal Counsel, from Valerie E. Caproni, General Counsel, Federal Bureau of Investigation (Mar. 27, 2008) ("FBI Memorandum").

[2] You also raise the question whether the conferral of authority to sign NSLs on Acting Deputy Assistant Directors and Acting Special Agents in Charge would square with the Appointments Clause; your memorandum assumes that the authority to sign NSLs implicates the Appointments Clause and that employees who sign NSLs must be appointed in accordance with that Clause. *See* FBI Memorandum at 6. We understand that the Director selects Acting Deputy Assistant Directors and Special Agents in Charge from among special agents and members of 'the FBI Senior Executive Service, and that the authority to appoint these officials has been delegated (and, in some cases, redelegated) from the Attorney General to subordinate officials of the FBI. *See id*. at 1, 6–7. As our Office previously has stated, the "question whether [the head of a department may] delegate appointment authority to an officer below the head of the department is a difficult one, and we cannot provide a definitive answer at this time." *Assignment of Certain Functions Related to Certain Military Appointments*, 29 Op. O.L.C. 133, 135 (2005). We noted in particular that "[t]he Clause was designed to 'limit[] the universe of eligible recipients of

## I.

Under 18 U.S.C. § 2709 (2006), 12 U.S.C. § 3414 (2006), and 15 U.S.C. § 1681u (2006), the FBI may issue NSLs seeking information relevant to national security investigations.[3] In particular, 18 U.S.C. § 2709(b) allows the FBI to obtain from a wire or electronic communications service provider the name, address, length of service, and billing records of a subscriber, while 12 U.S.C. § 3414 deals with customer records from financial institutions, and 15 U.S.C. § 1681u with certain information from consumer reporting agencies. To issue an NSL under these statutes, the FBI must certify in writing that the information requested "is sought for the conduct of an authorized investigation to protect against international terrorism or clandestine intelligence activities." 18 U.S.C. § 2709(b); 12 U.S.C. § 3414(a)(5); 15 U.S.C. § 1681u(a). If the FBI further certifies that "otherwise there may result a danger to the national security of the United States, interference with a criminal, counterterrorism, or counterintelligence investigation, interference with diplomatic relations, or danger to the life or physical safety of any person," the recipient of the NSL will be prohibited from disclosing the NSL's existence or content, except as necessary to comply with the NSL or to seek legal advice about it. 18 U.S.C. § 2709(c); 12 U.S.C. § 3414(a)(5)(D); 15 U.S.C. § 1681u(d). Both of these statutory certifications must be made by "[t]he Director of the Federal Bureau of Investigation, or his designee in a position not lower than Deputy Assistant Director at Bureau headquarters or a Special Agent in Charge in a Bureau field office designated by the Director." 18 U.S.C. § 2709(b), (c); 12 U.S.C. § 3414(a)(5); 15 U.S.C. § 1681u(a), (d). You have asked whether this language permits Acting Deputy Assistant Direc-

---

the power to appoint' in order to ensure that such actors were readily identifiable and politically accountable." *Id*. at 4 (quoting *Freytag v. Comm'r*, 501 U.S. 868, 885 (1991)). We are not in a position in the present opinion to resolve this difficult question about the delegability of a department head's authority to appoint inferior officers.

[3] The FBI Memorandum notes (at page 2) that 15 U.S.C. § 1681v (2006) similarly authorizes the issuance of NSLs to consumer reporting agencies (to obtain full credit reports), but that statute is different from the other NSL statutes insofar as it requires the certifications to be made by a "supervisory official" designated by the head of an agency or another official appointed by the President with the Senate's advice and consent. *Id*. § 1681v(b). We understand that, despite this textual difference, the FBI's policy is to follow the same procedures for issuing NSLs under section 1681v as for other NSLs.

tors and Acting Special Agents in Charge to make these certifications. We conclude that it does.

As a general rule, "[a]n acting officer is vested with the full authority of the officer for whom he acts." *Acting Officers*, 6 Op. O.L.C. 119, 120 (1982); *see Keyser v. Hitz*, 133 U.S. 138, 146 (1890); *Ryan v. United States*, 136 U.S. 68, 81 (1890); *Commissioners of Soldiers' Home—Vacancy*, 23 Op. Att'y Gen. 473, 475–76 (1901); *see, e.g., United States v. McGee*, 173 F.3d 952, 955–56 (6th Cir. 1999); *United States v. Pellicci*, 504 F.2d 1106, 1107 (1st Cir. 1974) ("There is no basis for concluding that one 'acting' as Attorney General has fewer than all the powers of that office."). We assume that Congress legislates with an awareness of this presumption, *see Comm'r v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 159 (1993), and we therefore construe statutes that authorize officers to perform specified functions as encompassing acting officers, even if the statutes do not expressly name them. See Memorandum for Richard L. Thornburgh, Assistant Attorney General, Criminal Division, from Antonin Scalia, Assistant Attorney General, Office of Legal Counsel, *Re: Designation of a Deputy Assistant Attorney General to Act as Assistant Attorney General* at 3–4 (Sept. 9, 1975) ("*Designation of a Deputy Assistant Attorney General*"); Memorandum for Stephen S. Trott, Assistant Attorney General, Criminal Division, from Robert B. Shanks, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Authority of Acting Assistant Attorney General to Authorize an Application for a Title III Wiretap* at 7 (July 10, 1984) ("*Authority of Acting Assistant Attorney General*").

Applying this principle, a 1975 opinion of our Office concluded that the federal wiretap statute, 18 U.S.C. § 2516 (1970), permitted an Acting Assistant Attorney General to authorize wiretap applications, even though the statute provided for authorization by the "[t]he Attorney General, or any Assistant Attorney General specially designated by the Attorney General." *See Designation of a Deputy Assistant Attorney General* at 3, 6. Our opinion was prompted by dicta in *United States v. Acon*, 513 F.2d 513, 516 (3d Cir. 1975), stating that Acting Assistant Attorneys General could not authorize wiretap applications because the statute did not list them. We disagreed with that view. We argued that *Acon* had erroneously relied on *United States v. Giordano*, 416 U.S. 505 (1974), which had held that the Attorney General's Executive Assistant could not approve a

wiretap application because the statute did not name the "Executive Assistant" as among the officials to whom the Attorney General could delegate his authority, and the statute's legislative history revealed an intent to restrict the delegation of authority to a small group of politically responsive, senior Department of Justice officials. *See Designation of a Deputy Assistant Attorney General* at 2. *Giordano* was not relevant to the issue at hand, we explained, because whether a power may be delegated to a particular official and whether an acting official may exercise that power are two distinct issues; *Acon* erred by failing to distinguish between an intent to limit delegation and the "extraordinary" intent "to reverse the normal rule concerning authority of acting officers." *Id*. at 4. We noted that reading a delegation limitation to exclude acting officials from a function would substantially expand the restriction with relatively small benefits. *Id*. Any such exceptions to the general rule about acting officials, we also noted, would impose a significant burden on acting officials by making it difficult to determine which powers of the permanent office they possess. *Id*. at 6 (citing *Pellicci*, 504 F.2d at 1107). Thus, although we recognized that "congressional concern for the sensitivity of a function could result in not merely the commitment of that function to particular officials but also in a prohibition against exercise of the function by any acting holders of the named offices," we concluded that evidence of intent to limit the delegability of a function alone would not show that Congress also intended to preclude acting officials from performing that function. *Id*. at 4.

A 1984 opinion of our Office reaffirmed the conclusions of our 1975 opinion. Nonetheless, we observed that intervening court cases had extended *Giordano*'s analysis to preclude Acting Assistant Attorneys General from authorizing wiretap applications. *See Authority of Acting Assistant Attorney General* at 1. We therefore advised caution in pursuing the position that the wiretap statute permitted Acting Assistant Attorneys General to approve wiretap applications. The wiretap statute, however, presented a specialized concern that is not presented by the NSL statutes. As described in *Giordano*, the legislative history of the wiretap statute revealed congressional intent to limit authority to approve wiretap applications to officials who could be held accountable through the political process, and it suggested that perhaps only Senate-confirmed presidential appointees are politically responsive in the relevant sense. *See id*. at 2–3

(citing *Giordano*, 416 U.S. at 520 & n.9). Thus, cases such as *Acon* stated that "an acting assistant attorney general [does not] meet the Supreme Court's test of political responsiveness." *Acon*, 513 F.2d at 516. The NSL statutes, in contrast, expressly authorize the issuance of NSLs by officials who are not Senate-confirmed and arguably are not politically responsive according to *Giordano*, and the legislative history of the NSL statutes, described in more detail below, does not reveal any special concern about the political accountability of officials who issue NSLs.

If the NSL statutes simply named "Deputy Assistant Directors" and "Special Agents in Charge" as among the officials whom the Director could designate to issue NSLs, the presumption about acting officials and our 1975 opinion would lead directly to the conclusion that Acting Deputy Assistant Directors and Acting Special Agents in Charge could sign NSLs. *See Designation of Deputy Assistant Attorney General* at 5 ("[T]he naming of the office[] goes merely to the level of which delegation is permitted and not to the issue of whether, for an interim period, a temporary holder of that office can perform the delegated function."). The text of these statutes, however, raises a substantial and difficult question whether "congressional concern for the sensitivity of" NSL functions has resulted "in a prohibition against exercise of [such] function[s] by any acting holders of the named offices." *Id*. at 4. These statutes do not simply name the officials whom the Director may designate to exercise NSL authorities. Instead, they reserve the exercise of NSL functions to the Director "or his designee *in a position not lower than* Deputy Assistant Director at Bureau headquarters or a Special Agent in Charge in a Bureau field office designated by the Director." 18 U.S.C. § 2709(b); 12 U.S.C. § 3414(a)(5); 15 U.S.C. § 1681u(a) (emphasis added). This language is unusual and might suggest a congressional intent to limit the exercise of NSL authority to permanent appointees, who, unlike acting officials, perhaps are more fittingly characterized as "in a position."[4]

---

[4] We are aware of two other statutes that use the formulation "in a position not lower than." *See* 20 U.S.C. § 1232g( j) (2006) (authorizing "the Attorney General (or any Federal officer or employee, in a position not lower than an Assistant Attorney General, designated.by the Attorney General)," to seek an ex parte court order allowing access to educational records in connection with terrorism investigations or prosecutions (emphasis added)); *id*. § 9573(e) (similar). Neither our Office nor any court has considered the meaning of these provisions.

## II.

Statutes about the designation of acting officials typically do not refer to such officials as being "in a position." The Vacancies Reform Act ("VRA"), for example, says that an acting officer "shall perform the functions and duties" of the vacant office. 5 U.S.C. § 3345(a) (2006). Other statutes use similar language or provide that the acting official shall "serve as" or shall "be" "Acting [Title]" in the event of a vacancy, absence, or disability. *See, e.g.*, 10 U.S.C. § 154(d) (2006) (providing that "the Vice Chairman [of the Joint Chiefs of Staff] *acts as Chairman and performs the duties of the Chairman* until a successor is appointed or the absence or disability ceases"); 12 U.S.C. § 1462a(c)(3)(B) (2006) ("In the event of a vacancy in the position of Director [of the Office of Thrift Supervision] or during the absence or disability of the Director, the Deputy Director *shall serve as Acting Director*."); 18 U.S.C. § 508 (2006) ("In case of a vacancy in the office of Attorney General, or, of his absence or disability, the Deputy Attorney General may *exercise all the duties of that office*.") (emphases added).

The existence of these formulations, however, does not demonstrate that by using the language "in a position not lower than," Congress sought to preclude Acting Deputy Assistant Directors from exercising NSL functions. Nothing in the statutes speaks directly to the issue of acting officials, and the phrase "in a position not lower than" easily could refer to the level to which the function may be delegated. In light of the distinction we drew in our 1975 opinion between provisions that restrict delegability and those that exclude acting officials from performing a function, and in light of the well-established presumption that acting officials may exercise the same authorities as permanent officeholders, the NSL statutes are best read as placing a limit on delegation, not overturning the ordinary presumption about acting officials. We believe Congress would have spoken more clearly had it intended to preclude acting officials from issuing NSLs. *See Designation of a Deputy Assistant Attorney General* at 6; *Authority of Acting Assistant Attorney General* at 7.

The legislative history of the NSL statutes generally supports the view that Congress sought to limit the delegation of NSL functions to FBI officials at the level of Deputy Assistant Director or above, rather than to preclude Acting Deputy Assistant Directors from issuing NSLs. As

originally enacted, 18 U.S.C. § 2709, 12 U.S.C. § 3414, and 15 U.S.C. § 1681u did not expressly limit the class of officials whom the Director could designate to sign NSLs. Instead, 18 U.S.C. § 2709 authorized "[t]he Director . . . (or an individual within the Federal Bureau of Investigation designated for this purpose by the Director)" to make the certifications required for NSLs (Electronic Communications Privacy Act, Pub. L. No. 99-508, § 201, 100 Stat. 1848, 1867 (1986)), and 12 U.S.C. § 3414 and 15 U.S.C. § 1681u provided that "the Director . . . (or the Director's designee)" could make NSL certifications (Intelligence Authorization Act for Fiscal Year 1987, Pub. L. No. 99-569, § 404, 100 Stat. 3190, 3197 (1986); Intelligence Authorization Act for Fiscal Year 1996, Pub. L. No. 104-93, § 601(a), 109 Stat. 961, 975 (1996)). In the conference reports accompanying 12 U.S.C. § 3414 and 15 U.S.C. § 1681u, however, the conferees stated that the Director should not delegate NSL authority below the level of Deputy Assistant Director. *See* H.R. Rep. No. 99-952, at 23–24 (1986) (Conf. Rep.) (noting that the conferees had "concluded that, should the Director of the FBI decide to delegate his authority [under 12 U.S.C. § 3414], . . . *he should delegate it no further down the FBI chain-of-command than the level of Deputy Assistant Director*" (emphasis added)); H.R. Rep. No. 104-427, at 37–38 (1995) (Conf. Rep.) ("As is the case with the FBI's existing National Security Letter authority . . . , the conferees expect, that if the Director of the FBI delegates th[ese] function[s] under [15 U.S.C. § 1681u], the Director will delegate [them] no further than the level of FBI Deputy Assistant Director."); *see also* H.R. Rep. No. 99-690, pt. 1, at 17 (1986) ("The Committee urges that, if the Director of the FBI delegates his function under [12 U.S.C. § 3414], he will delegate it no further down the FBI chain of command than the level of Assistant Director."). The conference report that accompanied 18 U.S.C. § 2709 does not as clearly reveal a concern about delegability, but it seems likely that Congress viewed this statute and the other NSL statutes as similar. *See* S. Rep. No. 99-541, at 44–45 (1986) ("It is intended that the [certification] requirement will be determined by a senior FBI official at the level of Deputy Assistant Director or above.").[5] There is no indication in the legislative history of 18 U.S.C.

---

[5] Congress subsequently codified these restrictions by amending 18 U.S.C. § 2709(b) to provide that the "Director of the [FBI], or his designee in a position not lower than

§ 2709, 12 U.S.C. § 3414, or 15 U.S.C. § 1681u that Congress intended to preclude acting officials from issuing NSLs.

The legislative history of the NSL statutes does not reveal anything more than intent to restrict the delegability of NSL functions. That intent does not support a conclusion that Congress meant to preclude Acting Deputy Assistant Directors from exercising NSL functions. In the absence of any evidence in the statutory text or legislative history of "extraordinary" congressional intent to "reverse the normal rule concerning authority of acting officers," *Designation of a Deputy Assistant Attorney General* at 4, we conclude that 18 U.S.C. § 2709, 12 U.S.C. § 3414, and 15 U.S.C. § 1681u permit Acting Deputy Assistant Directors at FBI headquarters to exercise NSL functions.

## III.

We also conclude that the NSL statutes permit Acting Special Agents in Charge to exercise NSL functions. As a preliminary matter, we note that the language in the NSL statutes, "in a position not lower than," may not apply to Special Agents in Charge of FBI field offices. It would be awkward and redundant for the NSL statutes to permit NSLs to be signed by the Director's "*designee* in a position not lower than . . . *a* Special Agent in Charge in a Bureau field office *designated by the Director*." (Emphasis added.) To avoid surplusage, we could read these statutes as authorizing the exercise of NSL authorities by the director's (1) "designee in a position not lower than Deputy Assistant Director at Bureau headquarters" or (2) "a Special Agent in Charge in a Bureau field office designated by the Director." *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001). On this reading, because the "in a position not lower than" language would not apply to Special Agents in Charge, they would simply be named among the officials whom the Director could designate to exercise NSL authorities. Under the ordinary presumption about acting officials, therefore, the NSL statutes would authorize Acting Special Agents in

Deputy Assistant Director," may sign an NSL. Pub. L. No.103-142, § 1, 107 Stat. 1491, 1491 (1993). Section 3414 of title 12 and 15 U.S.C. § 1681u were later amended to conform to 18 U.S.C. § 2709. *See* Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, Pub. L. No. 107-56, § 505, 115 Stat. 272, 365–66 (2001).

Charge to sign NSLs. *See Designation of a Deputy Assistant Attorney General* at 3–4 ("[T]he description of the class of officials who are authorized to perform certain acts also includes acting officials, even if they are not specifically mentioned[.]"); *see also McGee*, 173 F.3d at 955–56; *Pellicci*, 504 F.2d at 1107; *Commissioners of Soldiers' Home—Vacancy*, 23 Op. Att'y Gen. 473, 475–76 (1901).

Even if the phrase "in a position not lower than" applies to Special Agents in Charge, however, we would still read the statute as limiting delegation only, rather than overturning the presumption that acting officers may exercise the full powers of the offices in which they temporarily serve. Like the legislative history discussed above, the legislative record behind the addition of Special Agents in Charge to the NSL statutes does not show any congressional concern about the issuance of NSLs by acting officials. When Congress added Special Agents in Charge to the NSL statutes, it sought to expand, not restrict, the class of officials who may be authorized to issue NSLs. In 2001, Congress amended the NSL statutes to permit the Director to designate a "Special Agent in Charge in a Bureau field office," in addition to headquarters officials at the level of Deputy Assistant Director or above. Pub. L. No. 107-56, § 505, 115 Stat. at 365–66. In hearings on the proposed legislation, a Department of Justice official explained that the proposed amendment would "allow special agents in charge—that is, the top-ranking FBI field agent in each of the FBI's 56 field offices—to issue one of these letters rather than requiring the letter to be sent out by an Assistant Director at headquarters." *S. 1448, The Intelligence to Prevent Terrorism Act of 2001 and Other Legislative Proposals in the Wake of the September 11, 2001 Attacks: Hearing Before the S. Select Comm. on Intelligence*, 107th Cong. 24 (2001) (statement of David Kris, Associate Deputy Attorney General). A section-by-section analysis similarly explained that, "because [NSLs] require the signature of a high-ranking official at FBI headquarters, they often take months to be issued. . . . In many cases, counterintelligence and counterterrorism investigations suffer substantial delays while waiting for NSLs to be prepared, returned from headquarters, and served. The section would streamline the process of obtaining NSL authority." *Administration's Draft Anti-Terrorism Act of 2001: Hearing Before the H. Comm. on the Judiciary*, 107th Cong. 57–58 (2001). In view of the statutory presumption about acting officials and this indication of congressional intent to expand the

class of officials who may issue NSLs, we think that 18 U.S.C. § 2709, 12 U.S.C. § 3414, and 15 U.S.C. § 1681u permit Acting Special Agents in Charge to sign NSLs.[6]

DANIEL L. KOFFSKY
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[6] It might be argued that Acting Deputy Assistant Directors and Acting Special Agents in Charge should not be permitted to issue NSLs under the NSL statutes because the Director could designate relatively low-level employees to serve in these roles. *See* 136 Cong. Rec. 35,806, 35,817 (Oct. 26, 1990) (statement of Sen. Boren) (introducing amendment to NSL statutes that "adds the requirement that the Director's designee be of at least the rank of Deputy Assistant Director . . . due, in part, to the finding that critical decisions [concerning NSLs] were made at low levels at FBI Headquarters"). We do not think this possibility undermines our interpretation of the NSL statutes. Congress vested the authority to issue NSLs in Deputy Assistant Directors and Special Agents in Charge designated by the Director, and there is no indication of congressional intent to preclude issuance of NSLs by officials acting in these positions. Moreover, as the FBI Memorandum notes (at pages 1 and 7), the Director selects permanent and acting Deputy Assistant Directors and Special Agents in Charge from the same pool of FBI employees (special agents and members of the FBI Senior Executive Service). This practice further supports the view that the issuance of NSLs by Acting Deputy Assistant Directors and Special Agents in Charge should not raise any special concern under the NSL statutes.